UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
UNITED STATES OF AMERICA :
: 22 Cr. 297 (LGS)
v. :
:
GLENCORE INTERNATIONAL A.G., :
:
Defendant. :
:
---------------------------------------------------------------x

# DECLARATION OF HERMAN LEMAIRE

Pursuant to 28 U.S.C. § 1746, I, Herman Lemaire, declare in good faith as follows:

1. I submit this Declaration in support of the victim impact statement and request for restitution on behalf of Crusader Health RDC SARL ("Crusader DRC"), and Ian and Laurethé Hagen as 90% shareholders of Crusader DRC, in connection with Glencore International A.G.'s ("Glencore") criminal sentencing in the above-captioned case.

2. I am a member of the Brussels Bar and a partner in the law firm of van Cutsem Wittamer Marnef with offices at 235 avenue Louise, 1050 Brussels, Belgium.

3. I have been a practicing attorney for approximately forty-five years. My specialty for the past twenty years has been the business law of the Democratic Republic of Congo ("DRC") of which I have an in-depth knowledge.

4. My practice focuses on consultancy and litigation work, mainly in corporate, contract and general commercial law.

5. I have been ranked by Chambers Global as a top tier specialist in DRC business law since 2006. I have also been recognized by Best Lawyer for my corporate practice in Belgium.

6. I am the author of several articles on OHADA (Organization for the Harmonization of Business Law in Africa) and DRC law.

7. My *curriculum vitae* is attached as **Exhibit 1**.

## I. Assignment Agreement

8. DRC law allows an existing or future debt and the right attached thereto to be assigned by contract.

9. Claims for restitution from a defendant under U.S. law can thus be assigned under DRC law.

10. To create such an assignment, the parties must do the following:

    a. The parties must execute a written assignment agreement identifying the debt and the debtor. The assignment becomes effective between the contracting parties upon such execution, and

    b. The assignment must be notified to the debtor either by registered mail or by courier with the debtor countersigning a copy of the letter to serve as notification of receipt. The assignment becomes effective toward the debtor upon such notification.

11. I personally drafted the Agreement for the Assignment of Claims and Rights between Crusader DRC on the one hand and Ian and Laurethé Hagen on the other hand (the "<u>Assignment</u>"). Attached as **Exhibit 2** is a signed copy of the Assignment.

12. The Assignment was created according to the requirements of DRC law and represents a valid assignment of the claims and rights described therein – namely, Crusader DRC's restitution claim against Glencore in the above-captioned case – from Crusader DRC to the Hagens.

13. I have also reviewed a letter from Crusader DRC to Glencore, dated October 18, 2022, sent by registered mail to Glencore's corporate headquarters in Baar, Switzerland on October 20, 2022 (the "Notification Letter"). I have also reviewed the registered mail receipt for this letter (the "Receipt"). Attached as **Exhibit 3** are copies of the Notification Letter and the Receipt.

14. The Notification Letter notifies Glencore that Crusader DRC has assigned its restitution claim against Glencore in the above-captioned case to Ian and Laurethé Hagen. As a result, this notification is now effective against Glencore.

15. The Hagens are therefore lawfully empowered to pursue the assigned claims and recover any amounts that result from the resolution of those claims.

**II.     DRC Judicial Interest Rate**

16. DRC law provides for judicial interest on claims involving breach of contract.

17. When a plaintiff requests and the judge grants judicial interest, the rate set by the judge is usually between 8% and 10% unless the parties had agreed to a specific rate in the contract.

18. I reviewed the contracts entered into by Crusader DRC with Kamoto Operating Limited on September 10, 2008, and with DRC Copper and Cobalt Project SARL on November 25, 2008, as well as the unsigned draft contract between Crusader and Kamoto Copper Company SARL, dated May 1, 2009 (collectively, the "Contracts"). None of the Contracts contains an agreed upon rate of interest.

19. I have reviewed the judgment issued by the High Court of Kolwezi on January 10, 2011, in *Crusader Health RDC v. Kamoto Copper Company* (RC 4330) (the "2011 Judgment"). Copies of the 2011 Judgment in the original French and an English translation are attached as **Exhibit 4.** I have also reviewed the judgment issued by the Commercial Court of Kolwezi on December 31, 2019, in *Crusader Health RDC v. Kamoto Copper Company* (RAC 166) (the

"2019 Judgment"). Copies of the 2019 Judgment in the original French and an English translation are attached as **Exhibit 5.**

20. Both the 2011 Judgment and the 2019 Judgment reflect that Crusader DRC asked the Court to apply an 8% per annum judicial interest rate to the amounts claimed.

21. The judicial interest runs from the date of the writ of summons.

22. If a notice of default has previously been sent to the debtor, the creditor will also be entitled to interest at the same rate from the date of the notice of default until the judicial interest starts to run.

23. I have reviewed a letter entitled "Notice of Dispute," dated January 28, 2010, from Crusader to Katanga Mining Ltd. regarding the termination of the 2008 contracts referenced above. The letter serves as a notice of default for purposes of applying judicial interest in the DRC. The letter is attached as **Exhibit 6.**

24. Accordingly, under DRC law, judicial interest awarded to Crusader RDC based on damages related to the termination of the contracts would run from January 28, 2010.

**III.   Damages under Article 45 and Article 258**

25. Article 45 is a statute in the Congolese Civil Code, Book III, which states that a debtor shall be ordered to pay damages, either for the non-performance of the obligation or for the delay in performance.

26. Article 258 is a statute in the Congolese Civil Code, Book III, which states that "any conduct that causes damage to another person creates an obligation for the individual responsible for the conduct to repair the damage." In other words, if you make a mistake that causes damage, then you must pay to the victim to remedy the harm. Based on my review of the 2011 Judgment, Crusader DRC sought $5 million in Article 258 damages in its 2010 lawsuit.

27. Under DRC law, a party seeking damages for breach of contract pursuant to Article 45, such as lost profits and reimbursement for expenses under the contract, can also request Article 258 damages based on tort as part of their requested recovery.  The Article 258 damages are in addition to the other contract damages.  They are especially relevant in cases where the party seeking damages suffered additional damage as a result of fraud or a criminal offense committed by the other party.  The judge is then free to award damages *"ex aequo et bono"* ("on the basis of what is fair and good") or on the basis of documentary evidence.

28. Judicial interest, as described above, applies to both Article 258 damages and Article 45 damages.

29. If the court grants Article 258 damages and judicial interest, they are paid out to the party who was awarded damages in the same manner as the Article 45 damages.

**IV.   Arbitration Clauses / 2011 and 2019 Judgments**

30. DRC law recognizes the validity of contractual arbitration clauses but makes their application subject to an obligation of good faith.

31. The OHADA Common Court of Justice and Arbitration – the supreme court of the OHADA zone, which includes the DRC – decided by judgment nr. 012/12 of 8 March 2012 (EICB v. Groupe Eouelée, Recueil de Jurisprudence de la CCJA, nr. 18, p. 114) that the desire of the parties to have recourse to arbitration will only be respected if the parties act in good faith.

32. Consequently, if a party attempts in good faith to settle a dispute, but the other party responds with indifference marked by bad faith, the party acting in good faith can set aside the arbitration clause and bring a claim in court.  If the party acting in good faith made a showing as to the bad faith of the counterparty, the court would not dismiss the lawsuit for lack of jurisdiction due to the arbitration clause.

33.     This case law is particularly relevant where the arbitration clause includes a provision obliging the parties to try to settle their dispute in an amicable way before resorting to arbitration.  I have reviewed the Contracts and they contain such a provision.

34.     The arbitration clauses in the Contracts were discussed in the 2011 Judgment and the 2019 Judgment.  The 2011 Judgment reflects that KCC did not challenge the merits of the Crusader DRC's claims, and instead presented several procedural defenses to the Court.  Among these defenses were that the Court lacked jurisdiction because the Contracts contained arbitration clauses.  The Court did not rule on the arbitration clause issue or any of the other procedural defenses raised by KCC.  Instead, the Court dismissed the action based on an entirely unrelated procedural ground that had not been raised by KCC.  According to the Court, Crusader DRC did not have the appropriate corporate formation documents on file and therefore could not proceed with the lawsuit.  Based on my review of the statement of facts of the Glencore plea agreement, I understand that this judgment was the product of a bribe payment.

35.     The 2019 Judgment reflects that KCC, again, did not challenge the merits of the Crusader DRC's claims, and instead presented several procedural defenses to the Court.  KCC again raised the defense that the Court lacked jurisdiction because of the arbitration clauses in the contracts.  The Court considered and rejected that defense, finding that KCC acted in bad faith by preventing any chance of an amicable settlement that was nevertheless provided in the contract, and that Crusader DRC's claims were properly before the Court.

36.     The 2019 Judgment further reflects that the Court addressed the categories of damages Crusader DRC sought.  The Court noted that the factual record created some "uncertainty" in the calculation of damages and awarded Crusader DRC $6,864,556 in principal damages.  It is unclear from the text of the opinion which categories of principal damages were

included in the principal damages award or how the Court calculated the amount.  The Court also awarded Crusader DRC $4 million of the requested $20 million of Article 258 damages for a total of $10,864,556.  I have been informed, based on information from the Court's clerk, that the judgment has not been served on either party and the time to appeal has not yet run for either party.

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, the foregoing is true and correct.

Dated: October 25, 2022
Brussels, Belgium

_____
Herman Lemaire