# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.  22:CR-297 (LGS) |
| vs. | |
| GLENCORE INTERNATIONAL A.G., | |
| Defendant. | |

## RESPONSE TO VICTIM IMPACT STATEMENT AND
## REQUEST FOR RESTITUTION BY DR. IAN AND LAURETHÉ HAGEN

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................6

    A.    Crusader's 2008 Contracts and the 2010 DRC Lawsuit ...........................6

    B.    Crusader's Second Suit and the 2019 DRC Judgment............................8

ARGUMENT ..................................................................................................................9

I.    The Court May Order Restitution Only for the Value of the Judgment
Crusader Would Have Obtained in Its 2010 Lawsuit .......................................10

    A.    Restitution Under the MVRA Is Limited to the Actual Loss Crusader
Suffered as the Direct And Proximate Result of the Bribery Offense .................11

    B.    The MVRA Precludes Any Award for the Alleged Loss of Crusader's
DRC Business .................................................................................13

        1.    Loss of Crusader's DRC Business Was Not Directly and
Proximately Caused by the Bribery Offense ...............................13

        2.    Determining the Cause and Amount of the Loss of Crusader's DRC
Business Would Unduly Complicate and Prolong the Sentencing
Proceeding .................................................................................18

    C.    Legal Fees Incurred in Private Civil Litigation Are Not Recoverable
Under the MVRA .............................................................................19

    D.    The Hagens Cannot Obtain Restitution for Retrenchment or
Severance Costs ..............................................................................21

II.    The Court Should Award Restitution in the Amount of the DRC Court's
2019 Judgment.................................................................................22

III.    Prejudgment Interest Should be Calculated Year-By-Year Under A Reasonable Rate ....30

CONCLUSION.................................................................................................36

# **TABLE OF AUTHORITIES**

Page(s)

## **CASES**

*Alfano v. CIGNA Life Ins. Co. of N. Y.*,
   2009 WL 890626 (S.D.N.Y. Apr. 2, 2009)..................................................33

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)..................................................................................17

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
   902 F.3d 132 (2d Cir. 2018)......................................................................16

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   689 F. Supp. 2d 585 (S.D.N.Y. 2010), *amended on reconsideration* (Mar.
   23, 2010) ..................................................................................................32

*Garden City Boxing Club, Inc. v. Morales*,
   2005 WL 2476264 (E.D.N.Y. Oct. 7, 2005).............................................33

*Hughey v. United States*,
   495 U.S. 411 (1990)..................................................................................11

*In re Loc. #46 Metallic Lathers Union & Reinforcing Iron Workers & Its
   Associated Benefit & Other Funds*,
   568 F.3d 81 (2d Cir. 2009)........................................................................15

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
   40 F. Supp. 3d 332 (S.D.N.Y. 2014).........................................................31

*Kirton v. Nw. Mut. Life Ins. Co.*,
   2006 WL 3051772 (E.D.N.Y. Oct. 24, 2006)...........................................32

*Lagos v. United States*,
   138 S. Ct. 1684 (2018).....................................................................19, 20, 33

*New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*,
   266 F.3d 112 (2d Cir. 2001)......................................................................32

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996)....................................................................31

*SEIU, Loc. 32BJ v. Dayton Beach Park No. 1 Corp.*,
   2019 WL 120998 (S.D.N.Y. Jan. 4, 2019) ...............................................33

*United States v. Afriyie,*
   27 F.4th 161 (2d Cir. 2022), *cert. denied,* 2022 WL 6572860 (U.S. Oct. 11, 2022) ...............................................................................................20

*United States v. Archer,*
   671 F.3d 149 (2d Cir. 2011)..................................................................11

*United States v. Arledge,*
   553 F.3d 881 (5th Cir. 2008) ................................................................29

*United States v. Badaracco,*
   954 F.2d 928 (3d Cir. 1992)..................................................................29

*United States v. Blackburn,*
   9 F.3d 353 (5th Cir. 1993) ....................................................................20

*United States v. Blankenship,*
   179 F. Supp. 3d 647 (S.D. W. Va. 2016) .............................................17

*United States v. Calderon,*
   944 F.3d 72 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 953 (2020) *and cert. denied sub nom. Lillemoe v. United States,* 141 S. Ct. 954 (2020)...................12, 17, 18

*United States v. Chalupnik,*
   514 F.3d 748 (8th Cir.2008) .................................................................29

*United States v. DeGeorge,*
   380 F.3d 1203 (9th Cir. 2004) ..............................................................20

*United States v. Fair,*
   699 F.3d 508 (D.C. Cir. 2012) .............................................................29

*United States v. Galloway,*
   509 F.3d 1246 (10th Cir. 2007) ............................................................29

*United States v. George,*
   403 F.3d 470 (7th Cir. 2005) ................................................................29

*United States v. Goldberg,*
   661 F. App'x 33 (2d Cir. 2016) ............................................................23

*United States v. Goodrich,*
   12 F.4th 219 (2d Cir. 2021) ...........................................3, 5, 11-12, 14-15, 16

*United States v. Gordon,*
   393 F.3d 1044 (9th Cir. 2004), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018) ...............................................33

*United States v. Gushlak*,
    728 F.3d 184 (2d Cir. 2013)................................................................1, 9, 19, 31

*United States v. Jaffe*,
    314 F. Supp. 2d 216 (S.D.N.Y. 2004), *aff'd,* 417 F.3d 259 (2d Cir. 2005)................33, 34

*United States v. Lebedev*,
    932 F.3d 40 (2d. Cir. 2019).....................................................................17

*United States v. Marino*,
    654 F.3d 310 (2d Cir. 2011)....................................................................27

*United States v. Maynard*,
    743 F.3d 374 (2d Cir. 2014).................................................................21, 22

*United States v. McGinn*,
    787 F.3d 116 (2d Cir. 2015)..................................................................9, 23

*United States v. Qurashi*,
    2009 WL 10677000 (E.D.N.Y. Sept. 1, 2009) ......................................32, 33, 34

*United States v. Qurashi*,
    634 F.3d 699 (2d Cir. 2011)............................................................ *passim*

*United States v. Reifler*,
    446 F.3d 65 (2d Cir. 2006).....................................................................27

*United States v. Sharp*,
    463 F. Supp. 2d 556 (E.D. Va. 2006) .........................................................17

*United States v. Smerling*,
    2022 WL 1806300 (S.D.N.Y. June 1, 2022) ..............................................31, 33

*United States v. Torres*,
    703 F.3d 194 (2d Cir. 2012)....................................................................29

*United States v. Vilar*,
    729 F.3d 62 (2d Cir. 2013)...........................................................11, 14, 15, 32

*United States v. Weimer*,
    63 F. Supp. 3d 922 (N.D. Iowa 2014)...........................................................33

*United States v. Yalincak*,
    30 F.4th 115 (2d Cir. 2022) .................................................................9, 23

*United States v. Yeung*,
    672 F.3d 594 (9th Cir. 2012), *abrogated on other grounds by Robers v.*
    *United States,* 134 S. Ct. 1854 (2014) ........................................................29

*United States v. Zangari,*
   677 F.3d 86 (2d Cir. 2012)............................................................................29

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. Of Elec. Workers,*
   955 F.2d 831 (2d Cir. 1992)..........................................................................34

## STATUTES

18 U.S.C. § 3612...............................................................................................33

18 U.S.C. § 3663A................................................................................ *passim*

18 U.S.C. § 3664...........................................................................................9, 11

Defendant Glencore International A.G. ("Glencore" or the "Company") offers this response to the Victim Impact Statement and Request for Restitution (Dkt. 18) submitted by Dr. Ian and Laurethé Hagen (the "Hagens"), 90 percent shareholders in Crusader Health RDC SARL ("Crusader"), pursuant to the Mandatory Victims Restitution Act (the "MVRA"). For the reasons set forth below, Glencore respectfully requests that the Court award restitution, if any, in an amount of $10.86 million, with prejudgment interest of $1.14 million, for a total restitution award of $12 million.

## **INTRODUCTION**

Under the MVRA, a person who is directly and proximately harmed by the commission of certain offenses is entitled to restitution. 18 U.S.C. § 3663A; *United States v. Gushlak*, 728 F.3d 184, 194-195 (2d Cir. 2013). Glencore acknowledges that Crusader—and by extension, the Hagens—was harmed by the offense to which Glencore has pled guilty, and it is prepared to pay restitution in the amount of any loss directly and proximately caused by that offense. For the reasons set forth below, however, neither the text of the MVRA nor controlling Second Circuit law supports the Hagens' bid for restitution in the order of approximately $50 million. The losses alleged by the Hagens include speculative harms that extend far beyond the offense of conviction and a prejudgment interest rate well in excess of the rate typically applied in federal court.

As set forth in the Information, Dkt. 2 ("Information"), Glencore's offense of conviction (as relevant here) involved payment of a bribe in 2010 that resulted in the dismissal in 2011 of a breach-of-contract claim that Crusader had brought in the Democratic Republic of Congo

("DRC").  Dkt. 2 ¶¶ 72-76.[1]  The direct and proximate harm to Crusader caused by that bribe and resulting dismissal was the loss of any judgment Crusader might have been awarded by the DRC court.  The potential value to Crusader of that lost judgment can be readily determined because, as the Hagens acknowledge, Crusader has since pursued the same claim in the DRC courts a second time, filing suit in 2018 based on the same alleged breach of contract.  *See* Dkt. 18 at 18-20, 28-30.  In 2019, the DRC court ruled that Crusader was entitled to approximately $10.86 million in damages on that claim.  Although Crusader is arguably entitled to considerably less—or indeed nothing—in restitution, Glencore submits that the 2019 DRC judgment should provide the basis for an award of restitution, along with prejudgment interest set at a reasonable rate.  Consistent with the MVRA's text and purpose, that approach will make the Hagens whole for the harm to Crusader that directly and proximately resulted from Glencore's offense of conviction by restoring to them the amounts they could reasonably expect to have obtained from the DRC court absent the 2010 bribe and the interest they could have earned by investing that damages award.

The alternative for which the Hagens advocate seeks an award far beyond that authorized by the MVRA.  Apart from the value of the DRC lawsuit that was dismissed due to Glencore's bribe, the Hagens seek compensation for harms they claim were caused not by Glencore's offense of conviction, but by the underlying termination of Crusader's contracts—including severance costs, legal fees, and the asserted destruction of Crusader's entire business.  *See* Dkt. 18 at 5 (seeking approximately $16 million for the value of the lawsuit dismissed due to the bribe, plus more than $32 million for other categories of harms allegedly stemming from breach

---

[1] As this Court is aware, Glencore pled guilty to the Information on May 24, 2022.  Tr. Of Plea Hrg. at 27:1-7, *United States v. Glencore International A.G.*, No. 22-CR-00297 (S.D.N.Y. May 24, 2022).

of Crusader's contracts).  The Hagens stake their claim to these amounts on the theory that

Glencore's relevant conduct "goes beyond" the bribery conduct underlying the offense of

conviction, and that "[i]t is this broader conduct that the Court must also consider" in

determining the compensable losses to Crusader.  Dkt. 18 at 26.  But Second Circuit authority

squarely forecloses that proposition.  Restitution under the MVRA "may be imposed only for

losses arising from 'the specific conduct that is the basis of the offense of conviction.'"  *United

States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (citation omitted).  Here, the "specific

conduct" forming the basis of Glencore's "offense of conviction" is the payment of a bribe

resulting in dismissal of Crusader's 2010 DRC lawsuit, *see* Dkt. 2 ¶¶ 72-76—not the underlying

termination of Crusader's contracts that allegedly required Crusader to pay severance to

employees, incur legal fees, and ultimately shut down its DRC business.  To the extent the

Hagens attempt to recast those harms as arising from the bribe, they cannot satisfy the MVRA's

requirement of "direct[] and proximate[]" causation.  *Goodrich*, 12 F.4th at 229.  And some of

the expenses they seek to recover—in particular, legal fees and severance costs—are not

compensable expenses under the MVRA.

Moreover, determining the amount of the losses the Hagens seek would embroil the

parties and this Court in substantial litigation over complex factual and legal determinations.

The MVRA does not apply where "determining complex issues of fact related to the cause or

amount of the victim's losses would complicate or prolong the sentencing process to a degree

that the need to provide restitution to any victim is outweighed by the burden on the sentencing

process."  18 U.S.C. § 3663A(c)(3)(B).  As evidenced by the Hagens' extensive restitution

filings—which rely on some 40 exhibits, declarations, and purported expert reports—evaluating

the Hagens' claim to restitution for the loss of their business, severance costs, and legal fees

would require this Court to make extensive factual findings based on evidence entirely outside the current record, including expert testimony on the value of the Hagens' former business in the DRC.  Litigating those questions would inevitably burden the Court and delay imposition of Glencore's sentence to a degree that would substantially outweigh any "need to provide restitution" for harms so attenuated from the offense of conviction.  18 U.S.C. § 3663A(c)(3)(B).

The same considerations militate against the Hagens' effort to disregard the DRC Court's judgment in determining the value of the one category of harm that did directly and proximately result from the offense of conviction—i.e., the loss of the value of any judgment Crusader would have obtained in the DRC court had the breach-of-contract suit not been dismissed because of Glencore's 2010 bribe.  The DRC court's 2019 ruling has already determined the value that claim would have had.  For reasons explained below, that court arguably erred in awarding any judgment to Crusader at all—including because an arbitration clause in Crusader's contracts should have foreclosed any DRC litigation in the first place.  But given that the DRC court has already evaluated Crusader's breach-of-contract claim and determined what damages Crusader was and was not entitled to, it would make no sense to convert Glencore's sentencing proceeding into a full-fledged trial to undertake a new assessment of what damages Crusader would have obtained absent the 2010 bribe.  Like the Hagens' other asserted categories of harm, that approach would require this Court to delve into factual evidence concerning Crusader's contractual rights and resolve multiple issues of Congolese law.  In resisting reliance on the 2019 judgment, the Hagens contend that "the documentary record had deteriorated" by the time Crusader brought suit a second time.  Dkt. 18 at 30.  But even assuming that to be true—a fact the Court would have to hear evidence on and determine—the unavailability of records relevant to determining the value of Crusader's claim afresh provides all the more reason to give effect to

the DRC court's ruling.  The more sensible approach, consistent with the MVRA's imperative to avoid prolonging the sentencing process with burdensome collateral litigation, is simply to conclude that, absent the bribe, the value of Crusader's breach-of-contract claim in the DRC court would have been exactly what the DRC court later found it to be—approximately $10.86 million.

Finally, Glencore agrees that prejudgment interest should be awarded on the value of the DRC claim that was dismissed as a result of Glencore's offense.  But that interest must be set at a reasonable rate.  The Hagens' claim for 9 percent interest—more than twice the currently prevailing interest rate, and more than 30 times the rate at the time of the offense—would result in a windfall that is not supported by applicable case law.  Prejudgment interest under the MVRA serves to compensate the victim for loss of the ability to "put its money to productive use" during the relevant period.  *United States v. Qurashi*, 634 F.3d 699, 703 (2d Cir. 2011).  To provide a "rough but fair approximation" of that loss, prejudgment interest should reflect the interest rates that prevailed during that relevant period.  *Id.*  The Court should therefore apply the generally applicable interest rate used in federal proceedings—i.e., the annual interest rate for market yield on U.S. Treasury securities at one-year constant maturity.  Applying that rate to the award of $10.86 million on a year-by-year basis yields prejudgment interest in the amount of $1.14 million, for a total restitution award of $12 million.

The MVRA aims to "restore a victim, to the extent money can do so, to the position he occupied before sustaining injury."  *Qurashi*, 634 F.3d at 703 (citation omitted).  But the statute does not allow a victim "to recover more than his due," *id.* (citation omitted), or to burden the sentencing process to calculate and capture damages for speculative harms that are not closely connected to the offense of conviction, *Goodrich*, 12 F.4th at 229.  Glencore has accepted

responsibility for the bribery conduct underlying its offense of conviction, and it acknowledges

that Crusader (and the Hagens) are entitled to be made whole for losses directly and proximately

resulting from that offense.  Awarding restitution beyond those losses, however, would violate

the MVRA.

## **BACKGROUND**

A.  Crusader's 2008 Contracts and the 2010 DRC Lawsuit

The Hagens' claim stems from the termination of two contracts Crusader entered into in

2008 with DRC Copper and Cobalt Company ("DCP") and Kamoto Operating Limited ("KOL").

DCP and KOL were subsidiaries of Kamoto Copper Company ("KCC") and, by extension,

Katanga Mining Limited, in which Glencore had a minority stake at the time.[2]  Under its contract

with DCP, executed on November 26, 2008, Crusader agreed to perform medical services for

DCP employees and contractors in the DRC for a term of 36 months.  Hagen Decl. Ex. 5 (recitals

and cl. 3.2), Dkt. 19-5.  The termination provision of the contract provided that DCP "shall have

the right to terminate this agreement at any time by not less than (90) days' written notice to

[Crusader]."  Hagen Decl. Ex. 5 cl. 17.1, Dkt. 19-5; *see also id.* 3.2. ("This Agreement shall

remain in force for thirty six (36) months, provided that . . . the Agreement may be terminated at

any time in accordance with [the termination provisions]").  The contract further gave DCP the

right to terminate without 90 days' notice in the event of certain breaches or insolvency events.

*Id.* cl.17.2.  The contract was governed by South African law and provided that any dispute

would be subject to arbitration in South Africa under South African law, in which the decision of

the South African arbitrator would be final and binding.  *Id.* cls. 20.1-20.11.  Crusader's contract

---

[2] In 2008, Glencore was a minority shareholder in Katanga Mining Limited.  Glencore became the majority shareholder in Katanga Mining Limited in mid-2009.  Dkt. 18-10.

with KOL, dated September 10, 2008, similarly provided for Crusader to perform medical services for a 36-month term, subject to the same termination rights and arbitration provisions as the DCP contract.  *See* Hagen Decl. Ex. 4, Dkt. 19-4, cls. 3.2, 17.1-17.2, 20.1-20.11.

On January 11, 2010—fourteen months into the term of the DCP contract and sixteen months into the term of the KOL contract—KOL and DCP each provided written notice that their respective contracts would terminate after a period of 90 days, in accordance with the contracts' termination provisions.  Hagen Decl. Exs. 4-5, Dkts. 19-4, cls. 3.2, 17.1; 19-5, cls. 3.2, 17.1.

Notwithstanding the contractual provisions authorizing DCP and KOL to terminate the contracts for any reason upon 90 days' notice—and despite the contracts' provisions for binding arbitration in South Africa—Crusader sued KCC in the Kolwezi District Court in the DRC for wrongful termination of the agreements, asserting total damages of approximately $16.084 million.  In January 2011, the Kolwezi District Court dismissed Crusader's claim on procedural grounds (citing Crusader's failure to correctly register the company) following the November 2010 bribe payment detailed in the Information.  As Glencore has acknowledged, Glencore employees approved a $500,000 invoice that was used as a bribe payment to have a lawsuit seeking $16.084 million dismissed.  Dkt. 2 ¶¶ 72-76.  Crusader appealed, but the appeal was dismissed on procedural grounds in 2015 because the person who lodged the appeal was not authorized to file it.  There is no indication in the Information (or elsewhere) that the dismissal of Crusader's appeal resulted from any improper payment or other conduct on Glencore's part.

B. Crusader's Second Suit and the 2019 DRC Judgment

In 2018, Crusader filed a new suit against KCC in the Kolwezi Commercial Court based on the same breach-of-contract claim it had previously asserted, this time requesting $31,084,556 in damages, including $11,084,556 for reimbursement of contract expenses and lost profits plus $20 million in damages for wrongful termination under Article 258 of the Congolese Civil Code.[3]  KCC challenged the DRC court's jurisdiction in light of the contracts' arbitration provisions requiring any dispute to be submitted to binding arbitration in South Africa.  On December 31, 2019, the Kolwezi Commercial Court issued a ruling in Crusader's favor, concluding that the arbitration clause was unenforceable under Congolese law and that KCC had wrongfully terminated the contract.  Lemaire Decl. Ex. 5, Dkt. 20-5.  But the court rejected most of Crusader's asserted damages as legally foreclosed or unsupported by the evidence.  The court ordered KCC to pay $6.86 million for lost profits and contract expenses and an additional $4 million in damages under Article 258 of the Congolese Civil Code.  Lemaire Decl. Ex. 5, at 18-19 (Dkt. 20-5 at 41).  A certified translated copy of this judgment is included as Ex. 1.

Crusader never formally served the DRC judgment on KCC nor sought to collect on it.  As a result, KCC has had no opportunity to appeal that judgment.[4]  Instead, Crusader and KCC participated in further negotiations, and the parties agreed in principle to settle the dispute for a total of $8 million (including $6.8 million as principal and $1.2 million as damages)—more than $2 million less than the DRC court's judgment.  But the settlement was not finalized and, in the

---

[3] The Kolwezi Commercial Court did not exist when Crusader brought its initial lawsuit in 2010.  By 2018, when Crusader sued again, the Kolwezi Commercial Court had been established as the appropriate DRC court for litigating issues related to wrongful termination of contracts.

[4] Under Article 40 of the Congolese Code of Civil Procedures, the time limit for appealing begins to run only when the prevailing party serves the decision.  As Crusader has not served the decision on KCC, the time for appeal has not started running.  French version attached as Ex. 4; English version attached as Ex. 5.

interim, the Hagens asserted their claim for restitution in this case.  The settlement discussions in

the DRC have been suspended.  Glencore asks that any order of restitution granted by this Court

should be conditional on Crusader withdrawing its claim in the DRC and a requirement that

Crusader seek no further relief in the DRC to avoid the risk of double compensation for the same

conduct.[5]

## ARGUMENT

Federal sentencing courts have no authority to order restitution except as provided and

circumscribed by statute.  *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013).  The

Hagens accordingly may receive restitution only to the extent permitted by the MVRA.  That

statute aims to make victims of crime whole by compensating them for their actual losses.  But it

does not entitle victims to recover a windfall for speculative harms that are not closely connected

to the offense of conviction or to ensnare the sentencing process in burdensome and time-

consuming litigation over collateral matters.  To strike that balance, the MVRA places several

guardrails around courts' authority to order restitution.  A restitution award must be limited to

compensable losses that directly and proximately resulted from the specific conduct that formed

the basis of the offense of conviction, and restitution is precluded where determining the amount

---

[5] Although the MVRA states that "the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source" should not be considered in "determining the amount of restitution," 18 U.S.C. § 3664(f)(1)(B), the MVRA also "does not entitle the victim to a double recovery", as the "goal of the statute is to provide crime victims with full compensation, but not with a windfall."  *See United States v. Yalincak,* 30 F.4th 115, 122 (2d Cir. 2022).  Here, Glencore does not ask the Court to decrease the amount of restitution because of an outstanding judgment in the DRC.  Rather, Glencore asks the Court to ensure that Crusader does not receive double compensation for the same claims by requiring that Crusader dismiss the outstanding judgment in the DRC.  The Second Circuit has previously held that a "[r]eceiver's actual distribution of funds to the victims may offset the defendants' restitution obligations."  *United States v. McGinn*, 787 F.3d 116, 130-131 (2d Cir. 2015).  Because the Hagens operate businesses primarily in Africa, a U.S. court may not have jurisdiction to offset the restitution award after payment has been made.  Accordingly, if the Hagens seek to collect the outstanding judgment against the DRC, a U.S. court may be unable to make adjustments to the restitution following the payment.  As such, Glencore asks the Court to issue a restitution order that requires payment only after the withdrawal of the claim in the DRC and an agreement by Crusader not to seek further relief in the DRC.

of those losses would unduly complicate and prolong the sentencing process.  Here, the Hagens'

restitution claim far exceeds those boundaries.  Crusader (and by extension, the Hagens) were

harmed by the bribery conduct to which Glencore pled guilty, and they may be entitled to

restitution as a result.  But the proper measure of their losses should be limited to the value of the

breach-of-contract claim that was dismissed due to Glencore's bribe—as already determined by

the 2019 DRC judgment—and prejudgment interest applied at a reasonable rate.  Any other

approach would violate the MVRA and dramatically complicate and delay the imposition of

Glencore's sentence.

## I.      The Court May Order Restitution Only for the Value of the Judgment Crusader Would Have Obtained in Its 2010 Lawsuit

On behalf of Crusader, the Hagens seek restitution for four categories of harms:  (1) the

value of the claim asserted in Crusader's lawsuit against KCC that was dismissed due to

Glencore's bribe; (2) loss of the value of Crusader's remaining DRC business; (3)

retrenchment/severance costs Crusader paid to employees it was forced to terminate; and (4)

legal fees Crusader incurred in pursuing the DRC lawsuit against KCC.  Glencore agrees that a

restitution award is appropriate for the first of those four categories (albeit in an amount lower

than the Hagens have asserted).  The latter three categories of harm, however, did not directly

and proximately result from the bribery conduct forming the basis of the offense of conviction.

Under the Hagens' theory, these harms allegedly resulted instead from the termination of

Crusader's contracts—indeed, in many instances the asserted harms arose before Crusader even

filed its 2010 breach-of-contract suit.  To the extent the Hagens attempt to link those harms to the

bribery conduct, the relationship is far too attenuated to satisfy the MVRA's causation

requirements.  And some of the amounts the Hagens seek—for legal fees and severance costs—

are not included among the expenses recoverable under the MVRA.

A. Restitution Under the MVRA Is Limited to the Actual Loss Crusader Suffered as the Direct and Proximate Result of the Bribery Offense

Under the MVRA, when a defendant is convicted of an enumerated offense, the court "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). A "victim" under the statute is a person "directly and proximately harmed as a result of the commission of an offense." *Id*. § 3663A(a)(2). That statutory text "reflects an important limiting principle for restitution awards—namely, that Congress has 'authorize[d] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). Restitution is not available, for example, for losses caused by "relevant conduct," even though "such conduct may be properly included in [the] offense level calculation under the Sentencing Guidelines." *Vilar*, 729 F.3d at 97 (citation and quotation marks omitted). Similarly, the MVRA does not permit restitution for losses caused by an unprosecuted offense rather than by the offense of conviction. *United States v. Archer*, 671 F.3d 149, 170 (2d Cir. 2011). As the Supreme Court explained in construing similar language in an analogous statute, "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Hughey*, 495 U.S. at 420; *see also Vilar*, 729 F.3d at 97 n.36 ("we have . . . applied *Hughey* in cases addressing restitution under the MVRA").

A sentencing court therefore must first identify the offense of conviction and then "ascertain whether the putative 'victim' was 'directly and proximately harmed' by the defendant's commission of that 'offense,'" as required by the statutory text. *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021). As the Second Circuit has explained, this language requires the government to prove, by a preponderance of the evidence, both "cause-in-fact and proximate cause requirements." *Id.* at 229; *see id.* at 231; 18 U.S.C. § 3664(e). To satisfy the

- 11 -

cause-in-fact requirement, "the defendant's conduct must have been a necessary factor in bringing about the victim's harm." *Goodrich*, 12 F.4th at 229. And to satisfy the requirement of proximate cause, the victim's loss must bear a "sufficiently close connection to the conduct" to have been foreseeable to the defendant. *Id.* (citation omitted). Together, these requirements "limit the defendant's liability to the kinds of harms he risked by his conduct, the idea being that if a resulting harm was too far outside the risks his conduct created, it would be unjust or impractical to impose liability." *United States v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2019), *cert. denied,* 141 S. Ct. 953 (2020) *and cert. denied sub nom. Lillemoe v. United States,* 141 S. Ct. 954 (2020).

The MVRA accordingly authorizes the Court to award restitution to the Hagens only for losses that directly and proximately resulted from the specific conduct that formed the basis of the offense to which Glencore has pled guilty, as determined by the record of the plea proceedings. *See Goodrich*, 12 F.4th at 230. As set forth in the Information, that relevant conduct was the payment of a bribe used to secure the dismissal of Crusader's 2010 breach-of-contract suit. Dkt. 2 ¶¶ 72-76. The direct and proximate result of that bribe payment was the dismissal of Crusader's suit, which directly and foreseeably deprived Crusader of the opportunity to obtain whatever judgment the DRC would have awarded in that suit. Although Glencore disagrees with the Hagens' method of assessing the value of that lost judgment (and the rate of prejudgment interest applicable to that amount), *see infra* Section III, pgs. 30-35, Glencore agrees that they are entitled to restitution for that category of harm. As discussed below, however, awarding restitution for the other harms the Hagens assert would exceed the Court's authority under the MVRA. Some of the asserted expenses are simply not compensable under the MVRA. But more fundamentally, even if one were to accept the Hagens' narrative as true,

those alleged harms were caused by the termination of Crusader's Medical Services agreements and bear only a limited relationship to Glencore's bribery conduct.  And even if the Hagens could establish that those harms directly and proximately resulted from the bribery, determining that those harms in fact occurred and caused harm in the amounts the Hagens claim would require lengthy and complex collateral litigation that the MVRA precludes.

B. <u>The MVRA Precludes Any Award for the Alleged Loss of Crusader's DRC Business</u>

The Hagens principally seek to hold Glencore liable for Crusader's ultimate loss of its business in the DRC.  According to the Hagens, Crusader made a "significant capital investment" in reliance on its 2008 contracts with DCP and KOL—an investment that foundered after the contracts were terminated in 2010, leading eventually to the end of operations for Crusader's DRC business in 2013.  Dkt. 18 at 14-15, 40-42.  Based on a purported expert valuation, the Hagens seek more than $13 million in restitution for the loss of that business.  *Id.* at 41-42.  For several reasons, this claim fails.

1. Loss of Crusader's DRC Business Was Not Directly and Proximately Caused by the Bribery Offense

In the Hagens' own telling, Crusader's business was "destroyed" not by the specific conduct forming the basis of the offense of conviction, but by the termination of the 2008 contracts and the consequences of that termination for investments Crusader had made in the expectation that the contractual relationship would continue.  According to the Hagens, by the time of Glencore's offense conduct, Crusader was already "in desperate need of cash flow and was operating at a significant loss."  Dkt. 18 at 12.  Glencore's offense conduct merely "continued [a] downward spiral" that had already begun as a result of the termination of the contracts.  *Id.*; *see also id.* at 3 (Crusader foresaw "devastating economic consequences" due to

termination of the contracts even before filing suit); *id.* at 10 (citing potential loss of future profits and income and other losses due to "termination of the contracts"); *id.* at 12 (Crusader required loans before the bribery conduct because of the "void left by KCC's termination of the DCP and KOL contracts"); *id.* at 15 (Crusader ended operations in 2013 after "struggling to survive following KCC's unjust termination of the contracts").

Termination of Crusader's Medical Services agreements with DCP and KOL, however, formed no part of the basis of Glencore's offense of conviction. The Information makes no mention of those agreements, and does not reflect any conclusion that the termination of those contracts was in any way wrongful, let alone criminal. Dkt. 2 ¶¶ 72-76. Because the MVRA permits restitution only for losses caused by the offense of conviction, the economic harms that allegedly flowed to Crusader from the termination of the contracts cannot be the basis of any award under the MVRA.

The Hagens appear to assert two theories to avoid this conclusion, neither of which has merit. First, the Hagens seek to expand Glencore's relevant conduct to include not only the specific bribery conduct acknowledged in the Information, but also a "broader" scheme of "wide-ranging" corrupt conduct aimed at securing improper business advantages, Dkt. 18 at 26—a scheme that the Hagens contend included "terminat[ing] [the Crusader] contracts" to "preserv[e] Glencore's favor with the DRC Agent." *Id.* at 2-3; *see also id.* at 9-10, 40. But as explained above, the MVRA limits restitution to those losses caused by "the specific conduct that is the basis of the offense of conviction.'" *Vilar*, 729 F.3d at 97. And although the Hagens are correct that, in a conspiracy case, restitution may be based on the defendant's "criminal conduct in the course of [that] conspiracy," 18 U.S.C. § 3663A(a)(2); *see Goodrich*, 12 F.4th at 228, the "nature and scope" of that conspiracy offense must still be "determine[d]" by reference

to the "record of the guilty plea proceedings," *Goodrich*, 12 F.4th at 230.  Here, contrary to the

Hagens' premise, Glencore did not plead guilty to a "criminal conspiracy [to] . . . driv[e]

Crusader DRC out of business."  Dkt. 18 at 40.  Glencore pled guilty to conspiring to violate the

Foreign Corrupt Practices Act by engaging in a "[b]ribery [s]cheme," in which it corruptly paid

bribes for the benefit of foreign officials to secure an improper business advantage, including the

payment that was used as a bribe to have Crusader's DRC lawsuit dismissed.  Dkt. 2 ¶¶ 31, 72-

76.  Glencore's "criminal conduct in the course of [that] conspiracy" does not include business

dealings with Crusader that preceded and are completely distinct from the payment of a bribe to

benefit a DRC official.  *See, e.g.*, *Vilar*, 729 F.3d at 96-97 (distinguishing between conduct

forming the offense of conviction and conduct that is "relevant" for purposes of the Sentencing

Guidelines calculation); *In re Loc. #46 Metallic Lathers Union & Reinforcing Iron Workers &

Its Associated Benefit & Other Funds*, 568 F.3d 81, 85 (2d Cir. 2009) (finding that, based on the

elements required to prove that a defendant conspired to launder money, a defendant's guilty

plea to one count of conspiracy to launder money did not encompass the subsequent distribution

of those funds because the crime of conviction was completed once the defendant received the

money from fraudulent checks).  The Hagens speculate that terminating the Crusader contracts

served the same objectives for Glencore as the charged conspiracy—a supposition that would

need to be tested in litigation and that appears to rest on important factual errors.[6]  But even

assuming that were true, the termination of the contracts would not amount to "criminal conduct

---

[6] The speculative nature of the Hagens' arguments is highlighted by their effort to link the termination of the Crusader contracts to Glencore's efforts to "maintain its relationship with" the DRC Agent, as he in turn allegedly sought to secure a $110 million margin loan from Och-Ziff.  Dkt. 18, at 15-16, Dkt. 18-6, A-11, A15-A16, ¶¶ 55-59.  In fact, the DRC Agent referenced in the Glencore Plea Agreement and Information is not the same individual as the DRC Agent in Och-Ziff's plea agreement.  *See, e.g.*, Dkt. 18, at 2 & n.2 (citing *United States v. Och-Ziff Cap. Mgmt. Grp. LLC*, No. 16-516 (NGG), Deferred Prosecution Agreement, Att. A ¶ 31).  Relying on that single misidentification, the Hagens attempt to link the termination of the Crusader contracts on the one hand and Glencore's broader relationships in the DRC on the other.  Any purported connection is unsupported by any facts in the Information.

in the course of [that] conspiracy."  18 U.S.C. § 3663A(a)(2).  Terminating a contract is not

"criminal" conduct at all—let alone criminal conduct set forth in the "materials supporting the

plea" as part of the charged conspiracy.  *Goodrich*, 12 F.4th at 230.

Second, the Hagens seek to link the loss of Crusader's DRC business to the bribery

conduct itself on the theory that, absent Glencore's payment of the bribe to secure dismissal of

the 2010 lawsuit, Crusader would have been compensated at that time for the termination of the

contracts, which in turn would have reversed Crusader's "devastating" economic situation and

prevented the failure of Crusader's investments.  *E.g.*, Dkt. 18 at 3, 10, 40.  Those speculative

consequences are too remote from the bribery offense to satisfy the MVRA's proximate-cause

requirement, which limits restitution to losses bearing a "sufficiently close connection to the

conduct" to have been foreseeable to the defendant.  *Goodrich*, 12 F.4th at 229.

Proximate cause "requires some direct relation between the injury asserted and the

injurious conduct alleged, and [a] link that is too remote, purely contingent, or indirec[t] is

insufficient."  *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir.

2018) (internal citation and quotation marks omitted).  But here, any causal link between the

bribery payment and the loss of Crusader's DRC business was broken by Crusader's own

independent business judgments.  Crusader entered into the DCP and KOL contracts as a

sophisticated party, aware that the term of each contract was limited to three years and that each

contract could be terminated at any time with 90 days' notice.  *Supra* Background, pgs. 6-7.

That Crusader made a "significant capital investment" despite the possibility of termination, and

with the knowledge that the contracts had relatively short three-year terms with no assurance of

renewal, was a business decision entirely within Crusader's control.  Dkt. 18 at 10, 14-15, 40-41.

The MVRA "does not supply a windfall for those who independently enter into risky financial

enterprises through no fault of" the defendant.  *Calderon*, 944 F.3d at 97; *United States v. Blankenship*, 179 F. Supp. 3d 647, 654-655 (S.D. W. Va. 2016) (holding that "informed business decision" of party seeking restitution under VWPA was an "independent and intervening cause . . . severing any imaginable causal link to the Defendant's conduct"); *see also United States v. Sharp*, 463 F. Supp. 2d 556, 568 (E.D. Va. 2006) (a victim is not "directly and proximately" harmed if there is an "independent, intervening cause which broke the chain of necessary causation").  Moreover, as the Supreme Court has observed in analyzing proximate causation, "[b]usinesses lose and gain customers for many reasons," *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006), and it would be utterly speculative to hypothesize what would have happened to Crusader's business had it prevailed in the lawsuit and obtained damages.  "[I]t would require a complex assessment" to say the least to determine the extent to which Crusader's loss of *other* business is even indirectly attributable to its loss of two contracts with DCP and KOL.  *Id.*

Citing *United States v. Lebedev*, 932 F.3d 40, 57 (2d. Cir. 2019), the Hagens contend that proximate causation is satisfied whenever a defendant's offense conduct triggers a "chain of events" that "l[eads] to the ultimate failure of a financial institution."  Dkt. 18 at 39.  But in *Lebedev*, the offense of conviction—a bribery scheme that facilitated the processing of unsafe volumes of ACH transactions by a credit union—led directly to the credit union's failure.  932 F.3d at 57.  The Second Circuit found no abuse of discretion in the district court's restitution award because the sole intervening cause the defendant cited on appeal was simply the continuation of events that the defendant's offense had set in motion—i.e., the credit union's continued processing of an unsafe volume of ACH transactions.  *Id.*  Here, in contrast, Crusader's business decision to make investments on the assumption that its contractual

relationships with DCP and KOL would continue was completely independent of Glencore's

offense conduct.  Because those independent decisions break the chain of proximate causation,

the loss of Crusader's DRC business falls "too far outside the risks [Glencore's] conduct created"

to satisfy the MVRA.  *Calderon*, 944 F.3d at 95.

     2.  Determining the Cause and Amount of the Loss of Crusader's DRC Business Would
         Unduly Complicate and Prolong the Sentencing Proceeding

In any event, restitution for the loss of Crusader's DRC business would be inappropriate

for the independent reason that the MVRA forecloses restitution where "determining complex

issues of fact related to the cause or amount of the victim's losses" would unduly complicate or

prolong the sentencing process.  18 U.S.C. § 3663A(c)(3)(B).  Here, awarding restitution for the

asserted loss of Crusader's DRC business would require complex and time-consuming litigation

over issues relating to both causation and valuation that would significantly burden the

sentencing process.

With respect to causation, for example, the government would bear the burden to prove

by a preponderance of the evidence the Hagens' factual allegations as to the chain of events

leading from the termination of the contracts in 2010 to the end of Crusader's DRC business

operations in 2013, including whether Crusader reasonably relied on its contracts to make

significant investments, the nature and scope of those investments, and whether it was the

termination of the contracts, the bribery, or some other factor that caused the business to fail.

And with respect to valuation, the government would bear the burden to prove the amount of the

loss—a complex issue that would require expert analysis of the value of the business and

litigation over the proper methodological approach to assessing that value.  *See, e.g.*, Dkt. 18 at

41-42 & Ex. 15.  Litigating those issues would require precisely the unduly burdensome

collateral proceedings that the MVRA prohibits.  18 U.S.C. § 3663A(c)(3).  The Court should reject the Hagens' request for restitution for the value of Crusader's DRC business.

C.  <u>Legal Fees Incurred in Private Civil Litigation Are Not Recoverable Under the MVRA</u>

The Hagens next seek an award of $3,198,000 to compensate for legal fees Crusader purportedly incurred in pursuing its breach-of-contract claim in the DRC after the dismissal of its 2010 lawsuit.  Dkt. 18 at 38-39.  That request contravenes Supreme Court precedent holding that legal fees incurred in civil litigation are not recoverable under the MVRA.  *See Lagos v. United States*, 138 S. Ct. 1684 (2018).

As explained above, the Court's authority to award restitution is circumscribed by the terms of the statute.  *Gushlak*, 728 F.3d at 190.  The MVRA does not authorize restitution for any and all losses suffered by a victim, but instead "specifically lists the kinds of losses and expenses that it covers."  *Lagos*, 138 S. Ct. at 1689.  Where, as here, a defendant's offense results in damage to or loss of property of the victim, the Court is authorized to issue an order requiring the defendant to "return the property to the owner" or pay an amount equal to the property's value, 18 U.S.C. § 3663A(b)(1), and to "reimburse the victim" for specific enumerated expenses, including "expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," *id.* § 3663A(b)(4).

In *Lagos*, the Supreme Court considered whether those allowable "expenses" include attorneys' fees and other costs incurred when a victim pursues its own investigation or civil litigation related to the defendant's conduct.  138 S. Ct. at 1688.  The Court held that they do not. *Id.* at 1688-1690.  Instead, the Court concluded that allowable "expenses *incurred during*

*participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense*" are "limited to government investigations and criminal proceedings." *Id.* at 1687-88 (citation and quotation marks omitted).  In support of that holding, the Court stressed that the MVRA—unlike other restitution statutes—makes no provision for "restitution of the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." *Id.* at 1689-1690 (citation and quotation marks omitted).

*Lagos* forecloses the Hagens' request for restitution for legal fees.  The Hagens do not cite *Lagos*, and the decisions they rely on in which courts allowed recovery of legal fees all predated *Lagos*.  Dkt. 18 at 38.  Moreover, those decisions principally addressed questions of proximate causation without considering the MVRA's limitation on the categories of expenses that may form the basis of a restitution award.  *See United States v. DeGeorge,* 380 F.3d 1203, 1221 (9th Cir. 2004); *United States v. Blackburn,* 9 F.3d 353, 358-59 (5th Cir. 1993).  But as the Second Circuit has recognized, *Lagos* abrogated prior precedent broadly allowing restitution for attorneys' fees and held instead that a restitution award may include attorney's fees only when the fees are incurred in connection with a criminal matter.  *United States v. Afriyie,* 27 F.4th 161, 163 (2d Cir. 2022), *cert. denied,* 2022 WL 6572860 (U.S. Oct. 11, 2022); *see id.* at 169 (holding that *Lagos* prohibits recovery of attorneys' fees incurred in a private investigation that was not pursued at the government's invitation or request).  The legal fees Crusader incurred in pursuing

private civil claims in the DRC therefore do not qualify as "expenses" recoverable under the MVRA.[7]

     D.  <u>The Hagens Cannot Obtain Restitution for Retrenchment or Severance Costs</u>

     The Hagens also seek restitution in the amount of $57,294 for "retrenchment/severance costs" Crusader allegedly had to pay to employees it was "forced to terminate" following termination of the DCP and KOL contracts.  Dkt. 18 at 5, 32-33.  According to the Hagens, Crusader incurred those costs "[i]n 2010" after it "had to fire nearly all of its staff of 92 employees and pay them retrenchment."  *Id.* at 32.

     These expenses are not recoverable because, like the Hagens' request for legal fees, severance payments to terminated employees are not a compensable expense under the MVRA. As explained above, the only expenses allowable under the MVRA are those enumerated in § 3663A(b).  *See supra* Section I.A., pgs. 11-13; *see also United States v. Maynard*, 743 F.3d 374, 378-379 (2d Cir. 2014).  In *Maynard*, the Second Circuit held that wages a victim paid to temporary staff as a result of the defendant's offense were not compensable because they were not covered by any of the statutorily enumerated categories.  *Id.* at 380.  The wage payments "did not compensate for losses such as destruction of property"; they were not expenses the victim was required to incur to advance the investigation or prosecution of the offense; and the MVRA "does not include a business expense category."  *Id.*  Here, any "retrenchment/severance costs"

---

[7] Even if legal fees were recoverable, the Hagens' request for legal fees would face significant problems of proof. The Hagens assert that Crusader incurred more than $3 million in attorneys' fees, but their only support is a September 2022 invoice from a DRC lawyer that post-dates the judgment in the DRC litigation by more than two years and was issued shortly before the Hagens indicated their intent to file for restitution. Dkt. 19-26. That invoice indicates that the 2018 DRC lawsuit entailed only $26,200 in itemized legal fees. Dkt. 19-26, at 3, 6. The balance of the Hagens' $3 million request appears to reflect a 30% contingency fee on $10.5 million, a portion of the approximately $10.86 million awarded by the DRC court in 2019, but the Hagens have not submitted any evidence about Crusader's actual fee agreement with its DRC attorneys. Dkt. 19-26, at 3, 6.

that Crusader paid to its terminated employees would be subject to the same analysis as the

business expenses considered in *Maynard*.

Moreover, as the Hagens themselves contend, any payments Crusader made to employees

it was compelled to fire were not caused by the offense of conviction but by the termination of

the DCP and KOL contracts and Crusader's subsequent decision to pay severance.  As the

Hagens assert, Crusader informed KCC months before filing the DRC lawsuit that "the

termination of the contracts would inevitably lead to retrenchment of staff."  Dkt. 18 at 10

(quotation marks omitted).  Indeed, the Hagens assert that the entire amount of retrenchment

costs they seek were incurred by Crusader "[i]n 2010"—i.e., before Glencore's bribery conduct

occurred.  *Id.* at 32; *see* Hagen Decl. ¶ 57.  Crusader's independent decision to pay severance to

its terminated employees before the offense of conviction even occurred could not possibly be

the direct and proximate result of that offense.

Glencore thus stands ready to make the Hagens whole by paying restitution for the

compensable losses that directly and proximately resulted from its bribery offense—i.e., the

value of the judgment Crusader would have obtained had the bribery not led to dismissal of the

2010 DRC lawsuit, together with a reasonable rate of prejudgment interest.  But the MVRA

forecloses restitution for the other losses the Hagens seek to recover.

## II.     The Court Should Award Restitution in the Amount of the DRC Court's 2019 Judgment

As explained, restitution would be appropriate in this case to compensate Crusader (and

the Hagens, acting on Crusader's behalf) for the loss of the value of the breach-of-contract claim

that was dismissed due to Glencore's bribery conduct.  A straightforward measure of that loss is

readily available in the form of the DRC court's 2019 judgment, which adjudicated the same

claim that was at issue in Crusader's 2010 lawsuit.  The Court should therefore order restitution in the amount of the DRC judgment—$10.86 million—plus reasonable prejudgment interest.[8]

For the reasons explained above, the harm for which Crusader (or the Hagens acting on Crusader's behalf) should receive restitution is the loss of the value of the judgment that Crusader would have obtained on its 2010 breach-of-contract suit in the DRC.  That loss is compensable under the MVRA by a payment equal to the value of Crusader's lost property (i.e., the loss of its property interest in the cause of action), 18 U.S.C. § 3663A(b)(1)(B), and that loss directly and proximately resulted from Glencore's offense of conviction.  The Hagens' proposed approach to evaluating the amount of that loss, however, is misguided.

To best serve the MVRA's imperative to make victims whole without unduly burdening the sentencing process, the Court should determine the amount of the loss by looking to the DRC court's 2019 judgment.  That ruling adjudicated the same contract claim that Crusader pursued in 2010 and provides the only reliable evidence of the value of any judgment Crusader might have obtained in the 2010 lawsuit absent Glencore's bribe.  And in particular, the 2019 judgment makes clear that Crusader could not have obtained a judgment in the 2010 suit in the amount it now seeks.

After multiple hearings and careful consideration of Crusader's position under Congolese law, the DRC court concluded in 2019 that the bulk of the damages Crusader sought were

---

[8] As noted, Crusader has made no effort thus far to collect on that judgment in the DRC.  *Supra* Background, pgs. 8-9.  Because the MVRA "does not entitle the victim to a double recovery," *United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022), the restitution order should require payment only after Crusader has agreed to withdraw its DRC claim and agreed not to bring further claims based on the termination of contracts in the future. *See, e.g.*, *United States v. McGinn*, 787 F.3d 116, 130 (2d Cir. 2015); *United States v. Goldberg*, 661 F. App'x 33, 36-37 (2d Cir. 2016).

unsupported by the evidence and legally unwarranted.  With respect to damages for Crusader's

lost profits and expenses due to non-execution of the balance of the contracts, Crusader initially

sought an award of $11,084,556.  But the Kolwezi Commercial Court ruled that the amounts

Crusader requested "will not be fully admissible in view of the exhibits . . . submitted to the file

by Crusader Health" because "there is uncertainty in its calculation."  Ex. 1, at 18.  In particular,

the evidentiary record did not establish that each specific category of contract damages Crusader

sought had been "covered by a communication exchanged between the parties," and the court

therefore rejected the requests for "lack of certainty and enforceability."  *Id.* at 18.  Accordingly,

the DRC court awarded only $6,864,556 and rejected Crusader's remaining contract damages.

*Id.*  Similarly, with respect to damages under Article 258, Crusader initially sought an award of

$20 million.  *Id.* at 19.  Again, the Kolwezi Commercial Court held that Crusader's demand was

"exorbitant" and lacked "specific elements of assessment," reducing the Article 258 damages to

$4 million for a total award of $10.86 million.  *Id.*

      The DRC court's 2019 judgment provides the most reasonable basis for determining the

amount of restitution under the MVRA.  As such, restitution should be awarded in the amount of

$10.86 million plus reasonable prejudgment interest.

      To be sure, KCC has not yet had the opportunity to appeal the 2019 DRC judgment due

to Crusader's failure to formally serve it, and the true value of Crusader's 2010 breach-of-

contract claim might well be less than the DRC court awarded in 2019.[9]  Indeed, there is a strong

argument that Crusader's DRC claim had no value at all.  The contracts at issue in Crusader's

---

[9] Under Article 152 of the Congolese Code of Civil Procedures, the prevailing party can serve or provide notice of a court's decision only after paying 3% of the amount of the judgment to the Congolese Public Treasury.  To date, Crusader has not made this payment and thus has not formally served the judgment on KCC, which is a prerequisite for KCC to pay the amount owed under the Kolwezi Commercial Court judgment or appeal.  French version attached as Ex. 6.  English version attached as Ex. 7.

2010 lawsuit expressly stated that they were governed by the laws of the Republic of South Africa and that any disputes should have been resolved through arbitration, applying the Arbitration Act of the Republic of South Africa.  Hagen Decl. Exs. 4 & 5, Dkts. 19-4, 19-5, cls. 20.1-20.11.  These contracts were signed by Ian Hagen, Crusader's then-Managing Director and one of the shareholders now claiming restitution.  Hagen Decl. Exs. 4 & 5, Dkts. 19-4, 19-5, at 23.  Arguably, the dispute Crusader initiated in 2010 was improperly before the DRC court and would have had to be dismissed for lack of jurisdiction even if the offense conduct stated in the Information had never occurred.

Furthermore, even if the claims were properly litigated in the DRC courts, the contracts expressly provided that KOL and DCP "shall have the right to terminate this agreement at any time by not less than (90) days' written notice to Crusader," and the termination notices complied with that requirement.  Hagen Decl. Exs.4 & 5, Dkts. 19-4, 19-5, cl. 17.1.  Crusader's 2010 lawsuit should thus arguably have been dismissed under the plain language of the contracts, and the fact that Glencore procured the dismissal through its admitted criminal conduct arguably caused no proximate harm to Crusader at all.

If this Court were to conclude that the value of the judgment Crusader might have obtained in 2010 absent Glencore's bribery offense should be litigated anew, Glencore could advance these arguments.  Nevertheless, the more sensible approach is to adopt the valuation already found by the DRC court in 2019.  Calculating losses to Crusader in any other way would be a burdensome and complex exercise that would require additional discovery and significantly delay the sentencing process.  This fact-intensive analysis is precisely the type of exercise that the MVRA forecloses.  *See* 18 U.S.C. § 3663A(c)(3)(B).

The Hagens contend that the 2019 DRC judgment is not controlling and instead invite the Court to take evidence, such as their purported expert's analysis of Congolese law, to decide in the first instance how Crusader's 2010 lawsuit would have been resolved absent the bribe.  *See* Dkt. 18 at 29, 31.  But any effort to assess Crusader's losses without relying on the DRC court's 2019 judgment would require this Court to independently conduct a slew of complicated factual and legal analyses that would undoubtedly prolong sentencing and convert Glencore's sentencing into a full-blown trial over complex foreign jurisdictional issues and interpretations of Congolese and South African laws.  For example:

- As the Hagens' reliance on Mr. Lemaire's declaration suggests, the Court would have to determine both (1) whether the Crusader litigation belonged in the DRC court in the first place despite the parties' agreement to commit disputes to binding arbitration in South Africa, and (2) whether the breach-of-contract claim should be governed by South African law (as the contracts provided) or Congolese law (as the 2019 DRC court concluded).  Those determinations would entail complex choice-of-law questions, issues about the enforceability of arbitration and forum-selection clauses under Congolese law, and questions of contract interpretation in light of the factual record.

- The Court would have to determine whether termination with 90 days' notice constituted a material breach of the contracts under applicable law.  To do so, the Court would again have to resolve a choice-of-law question, then take evidence and conduct legal analysis to determine (1) the proper interpretation of the contract in light of the language and extrinsic evidence; (2) determine whether Crusader had engaged in any breach that would have justified termination of the contracts; and (3) determine whether any breach

by DCP and KOL was material in light of the relatively short time remaining on the three-year term of the contracts.

- To determine the amount of contract damages (if any), the Court would need to make findings, after substantial discovery and expert analysis, concerning the expenses Crusader incurred in performing the contracts and the lost profits and reimbursement expenses (if any) to which Crusader would have been entitled. Those calculations would be particularly complex. Crusader performed services on the two contracts for 19 months and 17 months out of the 36-month terms, respectively. *See* Hagen Decl. Exs. 16-19, Dkts. 19-16 - 19-19. The contracts, which were not priced at fixed amounts, provided for compensation based on the number of workers and their dependents that Crusader treated. The Court would need to review the payments made before the contracts' termination and decide whether those values were good proxies for extrapolating the amounts owed for the remainder of the contracts or whether other factors may have affected the payments following the termination of the contracts. *Cf. United States v. Reifler*, 446 F.3d 65, 138-139 (2d Cir. 2006) ("attempt[ing] to determine a victim's actual loss on the basis of dates and prices that were not hypothetical, assumed, or arbitrary" was a "difficulty [that] clearly implicates § 3663A(c)(3)(B)'s exclusion"); *United States v. Marino*, 654 F.3d 310, 317 (2d Cir. 2011) ("In addition, the MVRA provides that restitution may not be imposed if the determination of complex issues of fact relating to causation would unduly 'complicate or prolong the sentencing process.'").

- To determine whether Crusader would have been entitled to additional damages under Article 258 of the Congolese Civil Code, the Court would have to determine whether

Article 258 permits an award of damages in tort for an injury already compensated by an award of contract damages or whether, like its identical counterparts in the French and Belgian civil codes (upon which the DRC's code is based), Article 258 follows the principle of non-accumulation of liabilities precluding accumulation of contractual and tort liability in the same action. *See* Article 258 of the Civil Code, Book III (French version attached as Ex. 2, English translation attached as Ex. 3).[10] Further, even if Article 258 damages were available, the Court would have to determine whether the evidentiary record supported Crusader's claim of $5 million given the DRC court's award of a smaller amount. *Supra* Background, pg. 8; Dkt. 18 at 11, 25, 29, 30-31. As these examples demonstrate, litigating the value of the judgment Crusader would have obtained in the 2010 lawsuit from scratch would be a monumental undertaking that would significantly delay imposition of Glencore's sentence and burden the Court in precisely the manner the MVRA prohibits. *See* 18 U.S.C. § 3663A(c)(3).

The Hagens suggest that such a proceeding would be unnecessary because Glencore's Plea Agreement acknowledges that paying the bribe allowed Glencore to "avoid[] paying approximately $16,084,000 to settle the claim." Plea Agreement, Attach. A (Statement of Facts) ¶ 75. But the MVRA distinguishes between the loss to the victim and ill-gotten gains to the defendant, allowing restitution only for a reasonable approximation of the victim's actual, provable loss even if the gross gain to the defendant exceeded that loss. *See, e.g.*, *United States*

---

[10] Under French law, the principle of non-accumulation of liabilities was established by the French Supreme Court. *See Cour de Cassation, 1ère chambre civile*, judgment of 11 January 1922. That principle applies under Congolese law as well, at least in some circumstances. For example, where a tenant seeks to impose liability on a landlord based on destruction of leased property, "the victim cannot accumulate tortious liability and contractual liability. The victim should seek the landlord's contractual liability for failing to comply with its maintenance obligation." *See* Michael-Khalif Cideka Elie, La responsabilité de l'administration du fait de la ruine des bàc̦timents en droit positif congolais (Université Catholique de Bukavu, 2014) (free translation).

*v. Zangari*, 677 F.3d 86, 92-93 (2d Cir. 2012) ("We … hold that a sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss."); *see also United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012) (observing that "[t]he measures are different, and the purposes distinct" with respect to restitution to victims and forfeiture of gains).[11]  Glencore's admission as to the amount of the ill-gotten benefit it gained from the bribe payment does not establish the amount of Crusader's actual provable loss.

The Hagens also contend that adopting the DRC court's 2019 ruling would improperly penalize them for the passage of time between the 2010 lawsuit and the 2019 judgment, which they contend has resulted in "deteriorat[ion]" of the evidentiary record to the point that Crusader no longer had the records necessary to establish its contract damages.  Dkt. 18 at 18, 30.  Although the Hagens blame this passage of time on Glencore's offense conduct, they provide no explanation for the assertion that Crusader "had to wait eight years" before bringing the second suit in 2018.  Dkt. 18 at 30.  In any event, the fact that key evidence is no longer available provides all the more reason to adopt the DRC court's 2019 judgment given the MVRA's strong

---

[11] *See also United States v. Fair*, 699 F.3d 508, 514 (D.C. Cir. 2012) ("[I]n ordering restitution pursuant to the MVRA the district court may not substitute a defendant's ill-gotten gains for the victim's actual, provable loss."); *United States v. Yeung*, 672 F.3d 594, 604 (9th Cir. 2012) ("[A] loss determination used for Sentencing Guidelines purposes [cannot] be used to determine the amount of restitution, given the different methods of calculation and different purposes of the calculation."), *abrogated on other grounds by Robers v. United States,* 134 S. Ct. 1854 (2014); *United States v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008) ("[T]he amount of restitution that may be awarded is limited to the victim's provable actual loss, even if more punitive remedies would be available in a civil action.  Thus, while the fact that a defendant profited from the crime without causing actual loss to an identifiable victim may be an appropriate reason to increase his punishment, . . . . [r]estitution to MVRA victims must be based on the amount of loss actually caused by the defendant's offense." (internal quotation marks omitted)); *United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008) ("[T]he amount of the [restitution] award must be tied to the losses suffered by victims of the defendant's crime, not the defendant's gain from his illegal conduct."); *United States v. Galloway*, 509 F.3d 1246, 1253 (10th Cir. 2007) ("[A]lthough gain may be used to determine a defendant's offense level under the Guidelines (if it more closely reflects actual harm than actual loss does), it is not an appropriate estimate of loss when determining the amount of restitution under § 5E1.1 or the MVRA."); *United States v. George*, 403 F.3d 470, 474 (7th Cir. 2005) ("Restitution must be based on the victim's loss rather than the offender's gain."); *United States v. Badaracco*, 954 F.2d 928, 942-43 (3d Cir. 1992) ("Although ... gross gain is a valid measure of the loss attributable to this offense for purposes of guideline sentencing, a restitution order, in contrast, must be limited to the amount of [the victim's] loss as a result of [the defendant's] bank fraud.").

policy against complicated fact-intensive litigation.  The Court should avoid an unduly burdensome trial and hold that the most reasonable approximation of the judgment Crusader would have obtained in the DRC court on its breach-of-contract claim in 2010 is the judgment the DRC court actually awarded on that same claim in 2019.

III.    **Prejudgment Interest Should be Calculated Year-By-Year Under A Reasonable Rate**

Finally, the Court should award prejudgment interest from January 2011, the date the 2010 DRC lawsuit was dismissed, to the sentencing date.  *See United States v. Qurashi*, 634 F.3d at 704 (holding that "the MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order to ensure compensation in the full amount of each victim's losses") (citation and quotation marks omitted).  However, applying the "simple prejudgment interest rate of 8% to 9%" that the Hagens propose (Dkt. 18 at 37) would be excessive and result in a windfall that finds no support in the applicable case law.  As explained below, courts take a conservative approach in assessing prejudgment interest to "rough[ly] but fair[ly] approximat[e]" the loss of the victim's ability to "put its money to productive use" during the relevant period.  *Qurashi*, 634 F.3d at 703.  Following that prevailing authority, the Court should calculate prejudgment interest using the annual interest rate for market yield on U.S. Treasury securities at one-year constant maturity.  This would equal approximately $1.14 million.  Ex. 8.

As a general principle, courts have broad discretion to determine the appropriate interest rate for prejudgment interest.  "In deciding whether an award of prejudgment interest is warranted, a court should consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed

relevant by the court." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)

(citation omitted).  "Courts may adopt a variety of approaches to determining the interest rate

applicable to awards of prejudgment interest, since no federal statute governs which rate should

apply to prejudgment interest awards." *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 40 F. Supp. 3d

332, 344 (S.D.N.Y. 2014) (citations and internal quotation marks omitted).

The Hagens advance two principal arguments in support of their request for a rate of 8%

to 9%, but neither succeeds.  First, they contend that Crusader "had the right under DRC law to

request a standard prejudgment and post-judgment simple interest rate of between 8% and 10%

on their claim," and that the same rate is needed here to fully compensate Crusader (and the

Hagens) for their injuries. Dkt. 18 at 35.  As an initial matter, the Hagens asked the DRC court

to impose interest at a rate of "8% per year from the request until payment is complete," but the

DRC court did not grant Crusader's request. Ex. 1, at 7, 18, 20.  But in any event, the Hagens

cite no authority for adopting prejudgment interest rates under foreign law as a basis for

calculating prejudgment interest for restitution in a U.S. federal court.  And doing so would make

little sense because this Court's authority to award any restitution at all is prescribed by the

MVRA, not by Congolese law as the Hagens suggest.  *See Gushlak*, 728 F.3d at 190; *see also

United States v. Smerling*, 2022 WL 1806300, at *2 (S.D.N.Y. June 1, 2022) ("The inclusion of

prejudgment interest in a restitution order is derived not from [the victim's] civil damages, but

from the MVRA's requirement that defendants compensate victims for the full amount of [their]

losses." (citation and quotation marks omitted)).  Applying the outlandish interest rate the

Hagens suggest would violate the MVRA's core principle that a restitution order must not award

expectation damages or "guarantee the benefit of any bargain," but must simply compensate the

victim for "his actual loss." *Qurashi*, 634 F.3d at 704-05.  Courts instead look to "conservative

investments" when calculating equitable rates of prejudgment interest. *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 689 F. Supp. 2d 585, 618 (S.D.N.Y. 2010), *amended on reconsideration* (Mar. 23, 2010); *see also New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 131 (2d Cir. 2001) ("[I]nterest is intended to make the injured party whole ... and generally should be measured by interest on short-term, risk-free obligations.") (citation and quotation marks omitted).

Second, the Hagens argue that where, as here, a federal statute is silent as to the applicable prejudgment interest rate, New York State's statutory rate of 9% should apply. Dkt. 18 at 36. But courts in this Circuit routinely reject application of the state statutory rate of 9% as "unfairly high." *United States v. Qurashi*, 2009 WL 10677000, at *40 (E.D.N.Y. Sept. 1, 2009), *report and recommendation adopted*, 2009 WL 10677129 (E.D.N.Y. Sept. 30, 2009), *aff'd and remanded*, 634 F.3d 699 (2d Cir. 2011); *see also Vilar*, 729 F.3d at 97 n. 38 ("[T]here is some doubt as to whether it is ever appropriate to award interest at the state rate on federal claims."); *Kirton v. Nw. Mut. Life Ins. Co.*, 2006 WL 3051772, at *9 (E.D.N.Y. Oct. 24, 2006) (noting that New York's statutory rate was last modified in 1981, when interest rates were at record highs, well above 9%). Instead, as noted, courts "presume conservative investments" to estimate the rate of return on a hypothetical investment, "looking to the rate of return on government-backed instruments such as treasury bills or treasury notes." *Fendi Adele S.R.L.,* 689 F. Supp. 2d at 618. For example, in MVRA restitution cases in particular, courts in this circuit have looked to federal statutory rules governing post-judgment interest, which take the average of the yield rate for one-year constant-maturity securities from the week before the defendant is liable for interest, to set the appropriate rate of prejudgment interest. *See, e.g.*, *United States v. Qurashi*, 2009 WL 10677000, at *41 (applying average One-Year Treasury Rate to calculate interest on MVRA

restitution claim); *Smerling*, 2022 WL 1806300, at *2 (applying 18 U.S.C. § 3612 in calculating a prejudgment interest rate of 2.036% in a restitution claim under the MVRA).  This approach aligns with the practice in other circuits.  *See, e.g.*, *United States v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir. 2004) (applying Treasury Bill rate), *abrogated on other grounds by Lagos v. United States*, 138 S. Ct. 1684 (2018); *United States v. Weimer*, 63 F. Supp. 3d 922, 940 (N.D. Iowa 2014) (same).

Crusader's reliance on *United States v. Jaffe*, 314 F. Supp. 2d 216 (S.D.N.Y. 2004), *aff'd*, 417 F.3d 259 (2d Cir. 2005), is misplaced.  As an initial matter, *Jaffe* was decided before the Second Circuit issued its decision in *United States v. Qurashi*.  *Qurashi* not only established the availability of prejudgment interest under the MVRA, but also upheld the district court's application of an average One-Year Treasury Rate to calculate interest.  *See Qurashi*, 2009 WL 10677000, at *41.  Notably, no courts have followed *Jaffe*'s approach to calculating prejudgment interest on MVRA claims and at least one has expressly rejected its reasoning.  *See Weimer*, 63 F. Supp. 3d at 940.[12]

Here, Crusader seeks application of a 9% prejudgment interest rate for a period of more than eleven years.  For almost half of that time period between the harm and the sentencing date, the interest rate averaged less than 0.2%—i.e., 1/45th of the 9% interest rate that Crusader is

---

[12] Crusader's non-MVRA precedents are inapposite for similar reasons.  In each, the span of time to which prejudgment interest would be applied was far shorter than the eleven-year period at issue here.  *See SEIU, Loc. 32BJ v. Dayton Beach Park No. 1 Corp.*, 2019 WL 120998, at *4 (S.D.N.Y. Jan. 4, 2019) (under one year); *Alfano v. CIGNA Life Ins. Co. of N.Y.*, 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009) (three years and three months); *Garden City Boxing Club, Inc. v. Morales*, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (one year and four months).  Moreover, Crusader's reliance on non-MVRA decisions is inappropriate, as one of the considerations for determining prejudgment interest is "the remedial purpose of the statute involved," which differs between MVRA and other statutes permitting restitution.  *See Alfano*, 2009 WL 890626, at *6-7 (noting that prejudgment interest of 9% was granted because "private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose").

proposing.[13]  Since then, the average market yield on U.S. Treasury securities at 1-year constant

maturity has not increased significantly: the highest average annual interest rate occurred in

2018, at 2.33%, in 2019, at 2.05%, and in 2002, at 2.25%.  The remaining years (2015, 2016,

2017, 2020) averaged interest rates of 0.32%, 0.61%, 1.20%, and 0.37%, respectively.  To argue

that Crusader is entitled to 9% interest rate over a period when the average annual market yield

on U.S. Treasury at 1-year constant maturity was less than a tenth of 9% would grant Crusader

significantly beyond the full amount of Crusader's losses.

Moreover, the victim seeking restitution in *Jaffe* was the Bank of New York, an

institution that could plausibly claim that, absent the defendant's conduct, it could have made

productive use of the funds resulting in returns close to 9%.  There is no basis to conclude that

Crusader could have matched the return on investment that a lending institution like the Bank of

New York could expect.  *See Qurashi*, 2009 WL 10677000, at *40 (noting application of APR

rate between 9.5% and 3.25% for prejudgment interest would be "unfairly high" for non-

financial institutions, "particularly since this is the rate charged by banks when loaning money to

borrowers").  In short, while the Court in *Jaffe* applied the New York statutory rate, Crusader

fails to show how this outlier case establishes that its "actual loss," *Qurashi*, 634 F.3d at 705,

encompasses a return of 9% on investment over an eleven-year period.

Restitution is intended to compensate the victim for "his actual loss."  *Id*. at 704.

Crusader asks for much more.  *See Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. Of

Elec. Workers*, 955 F.2d 831, 834 (2d Cir. 1992).  Instead of using the 9% Crusader proposes,

---

[13] Even in *Jaffe,* when the court mandated the 9% interest rate, the defendant was required to pay only about $2 million more than it would have owed using the one-year Treasury rate.  *See* 314 F. Supp. 2d at 223-24.  In contrast, here, the difference between a 9% interest rate and the market yield on U.S. Treasury securities at 1-year constant maturity would be between $14 and $18 million.

Glencore proposes applying the annual interest rate for market yield on U.S. Treasury securities at one-year constant maturity to calculate the interest year-over-year.  For example, in 2011, the average interest rate based on the market yield on U.S. Treasury securities at one-year constant maturity was 0.18%.  For a judgment of $10.86 million, Crusader would have received $17,868.14 in interest, thus resulting in a total of $10,877,868 at the end of 2011.  A more comprehensive calculation of year-by-year interest rates and interest payments is included in Exhibit 8.  This approach will most closely approximate the return Crusader could have obtained had it received the funds in 2011, "restor[ing]" Crusader and the Hagens, "to the extent money can do so, to the position [they] occupied before sustaining injury."  *Qurashi*, 634 F.3d at 703.

## **CONCLUSION**

The Court should award restitution in the amount of $10.86 million plus a reasonable rate of prejudgment interest.


Dated: November 8, 2022


        Respectfully submitted,

        */s/ Howard M. Shapiro*

        Howard M. Shapiro
        Kimberly A. Parker
        WILMER CUTLER PICKERING
          HALE DORR LLP
        1875 Pennsylvania Avenue NW
        Washington, DC 20006
        Tel: (202) 663-6606
        Fax: (202) 663-6363
        howard.shapiro@wilmerhale.com
        kimberly.parker@wilmerhale.com

        Erin G.H. Sloane
        Claire M. Guehenno
        WILMER CUTLER PICKERING
          HALE DORR LLP
        250 Greenwich Street,
        New York, NY 10007
        Tel: (212) 295-6458
        Fax: (212) 230-8888
        erin.sloane@wilmerhale.com
        claire.guehenno@wilmerhale.com

        *Attorneys for Glencore International A.G.*

## CERTIFICATION OF SERVICE

I hereby certify that on November 8, 2022, I electronically filed the above document and corresponding exhibits with the Clerk of the Court using Cm/ECF, which will send electronic notification of such filing to all registered counsel.

Dated: November 8, 2022

By:  */s/ Claire M. Guehenno*
     Claire M. Guehenno