UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **22 Cr. 297 (LGS)** |
| -v.- | |
| GLENCORE INTERATIONAL A.G., | |
| Defendant. | |

## THE GOVERNMENT'S SENTENCING MEMORANDUM

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

GLENN S. LEON
Chief, Fraud Section
Criminal Division

BRENT WIBLE
Acting Chief, Money Laundering and
Asset Recovery Section
Criminal Division

Juliana Murray
Michael McGinnis
Assistant United States Attorneys
Southern District of New York

Randall Warden
Leila Babaeva
Trial Attorneys
Fraud Section, Criminal Division

Michael Khoo
Trial Attorney
Money Laundering and
Asset Recovery Section, Criminal Division

*Of Counsel*

0

**Table of Contents**

I.     **Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    **Background of the Offense and Investigation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The Statement of Facts and Conspiracy Date Range . . . . . . . . . . . . . . . . . . . . . . 5

III.   **Appropriateness of the Proposed Resolution** . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.  Applicable Guidelines Range . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.  Reduction of the Criminal Fine Below the Sentencing Guidelines . . . . . . . . . .  8

        1.  Cooperation Credit Pursuant to the Justice Manual's FCPA Corporate
            Enforcement Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  Reducing the Fine Below the Guidelines is Consistent with Prior
            Resolutions and Avoids Unwarranted Sentencing Disparities . . . . . . . . . . 13

    C.  Sentencing Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        1.  Seriousness of the Offense, Respect for the Law, and Just Punishment . . . . 17

        2.  Adequate Deterrence and Protection of the Public. . . . . . . . . . . . . . . . . . . 19

        3.  History and Characteristics of Glencore . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.   **Crediting Foreign and Domestic Resolutions** . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

    A.  Avoiding "piling on" Fines for the Same Misconduct . . . . . . . . . . . . . . . . . . . 21

    B.  Crediting Foreign Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C.  Payments to the CFTC in Lieu of Forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.    **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.      **Introduction**

For more than a decade, Glencore International A.G. ("Glencore," the "Company," or the "Defendant") engaged in a conspiracy to bribe foreign officials in multiple countries, resulting in a gross pecuniary gain of over $315 million.  Glencore has accepted responsibility for this serious criminal conduct and pleaded guilty to an Information charging the Company with one count of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"), pursuant to a plea agreement (the "Plea Agreement").  The terms of the Plea Agreement reflect the seriousness of the offense, impose a just punishment, and deter future criminal conduct both by the Company and by the broader business community.  Indeed, the Plea Agreement requires Glencore International A.G., the Swiss-based operational parent company of a multinational conglomerate, to pay over $700 million in criminal fines and forfeiture, to accept the imposition of an independent compliance monitor for three years, and to continue to cooperate fully with the Department of Justice ("Department" or "DOJ").  A sentence pursuant to these terms will avoid unwarranted sentencing disparities of similarly situated companies and afford adequate specific and general deterrence.

In reaching the terms of this resolution, the Department considered the nature and seriousness of Glencore's crimes, but also recognized Glencore's voluntary cooperation and meaningful remediation, thus reducing the criminal fine by 15 percent below the bottom of the Sentencing Guidelines.  As detailed below, such a reduction is consistent with both long-established practice and with the Justice Manual's guidance for FCPA cases.  Specifically, the terms of the Plea Agreement follow the Department's formalized policy in FCPA cases and other corporate enforcement matters in the Criminal Division and are in line with prior corporate resolutions.

In sum, and as set forth further below, the terms of the global resolution with Glencore—which was negotiated and coordinated with several other domestic and foreign authorities—are fair, appropriate, and designed to ensure that the sentence is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a)(2). In accordance with the Court's instructions at the hearing on May 24, 2022, the Department submits this memorandum in aid of sentencing and requests that the Court accept and impose the terms of the Plea Agreement.

## II.   **Background of the Offense and Investigation**

### A.  **Procedural History**

On May 24, 2022, the Department filed a one-count Information charging Glencore International A.G., the Swiss-based parent entity of one of the world's largest commodities trading and mining companies, with conspiracy to violate the anti-bribery provisions of the FCPA, in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Section 78dd-3. (*See* Dkt. 2 (the "Information")). Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the Department and Glencore submitted the fully executed Plea Agreement in open court for Your Honor's consideration. *See* Fed. R. Crim. P., R. 11(c)(2). The terms of the Plea Agreement provide that Glencore International A.G., among other things, plead guilty to Count One of the Information, charging conspiracy to violate the FCPA, pay a total criminal fine in the amount of $428,521,173 and criminal forfeiture in the amount of $272,185,792, retain an independent compliance monitor for the term of the Plea Agreement (at least three years), and continue to cooperate with the Department.

On the same day, the Court held a hearing, during which Glencore pleaded guilty to Count One of the Information. (Tr. at 27:1-13.) The Court accepted the guilty plea and adjudicated the Company guilty of conspiracy to violate the FCPA. (*Id.* at 27:16-25; 28:1-6.) After accepting

Glencore's guilty plea, the Court made specific inquiries regarding certain terms of the Plea Agreement and reserved its decision on accepting the Plea Agreement pending additional submissions by the parties.   (*Id.* at 46: 11-13.)

### B.  The Statement of Facts and Conspiracy Date Range

During the plea hearing on May 24, 2022, the Court asked several questions about the charging documents, including the Statement of Facts and the Information, as well as whether any individuals had been charged in connection with the misconduct at issue.[1]  As a result of its multi-year investigation, the Department developed evidence through various sources sufficient to prove that the Company conspired to violate the FCPA.  The Department's evidence derived from, *inter alia*, witness interviews, grand jury materials, and relevant corporate documents produced by the Company.  As Glencore pointed out in detail in its Sentencing Memorandum of October 21, 2022, Glencore cooperated with the Department's investigation and voluntarily provided significant relevant evidence, including documents and facts obtained through Glencore's own internal investigation that assisted the Department in furthering its investigation into the Company and culpable individuals.  In preparing the Statement of Facts and the Information, the Department analyzed evidence it obtained from its investigation, including documents and facts provided by Glencore, which the parties agreed was an accurate description of admissible evidence that would prove Glencore's guilt beyond a reasonable doubt if this matter were to proceed to trial.

Regarding the conspiracy date range, the Department's investigation established that "[f]rom at least in or about 2007 up to and including in or about 2018, Glencore, through certain

---

[1] The allegations contained in the Statement of Facts and the Information are the same; however, the Information contains certain sections (such as Statutory Allegations, Manner and Means of the Conspiracy, and Forfeiture Allegations) that are not included in the Statement of Facts.  (*See* Information at ¶¶ 77-83.)

of its employees and agents, while acting on behalf of Glencore, together with its co-conspirators, knowingly and willfully conspired and agreed with others to corruptly provide more than $100 million in payments and other things of value to various intermediaries with the intent that a significant portion of these payments would be used to pay bribes to and for the benefit of foreign officials to secure an improper advantage and to influence those foreign officials in order to obtain and retain business in Nigeria, Cameroon, Ivory Coast, Equatorial Guinea, Brazil, Venezuela, and the Democratic Republic of the Congo." (*See* Plea Agreement, Attachment A, Statement of Facts ("Statement of Facts"), at ¶ 30.)  The evidence identified in the Department's investigation established that the conspiracy charged in the Information continued up through (but not beyond) 2018.  Specifically, the evidence showed that Nigeria Intermediary Company continued to invoice Glencore Energy UK Ltd. until early 2018.  As explained in the Plea Agreement, "Nigeria Intermediary Company was a Cyprus-incorporated intermediary used by Glencore and its subsidiaries to pay bribes to Nigerian government officials in order to obtain oil cargoes from NNPC for GLENCORE." (*See* Statement of Facts at ¶ 27.)  Furthermore, "[b]oth Glencore and the Glencore UK Subsidiaries engaged West Africa Intermediary Company and Nigeria Intermediary Company to pursue business opportunities and other improper business advantages, while knowing that the intermediaries would make bribe payments to Nigerian government officials to obtain those business opportunities and advantages." (*See* Statement of Facts at ¶ 35.)

As to the Court's question about individual charges, one individual, Anthony Stimler, has been charged to date in connection with the Department's ongoing investigation into this scheme. Stimler held several roles at Glencore Energy UK Ltd., including as a senior trader in charge of Glencore's West Africa desk for the crude oil business.  *See* Plea Agreement, Attachment A – Statement of Facts at ¶ 10.  Stimler pleaded guilty pursuant to a cooperation agreement and has

yet to be sentenced. (*See United States v. Anthony Stimler*, 21 Cr. 471 (PKC)).  The investigation into other individuals is ongoing and involves coordination with foreign law enforcement authorities.

### III.   Appropriateness of the Proposed Resolution

The recommended sentence in the Plea Agreement is a fair and appropriate disposition in this matter that is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a)(2).  It is also consistent with other global resolutions in FCPA corporate matters and thus avoids unwarranted sentencing disparities.

#### A.  Applicable Guidelines Range

As set forth in the Plea Agreement, Glencore's applicable Guidelines offense level can be calculated as follows (*see* Plea Agreement ¶ 19):

Offense Level – Bribery Conduct (Highest Offense Level).  Based upon U.S.S.G. § 2C1.1, the total offense level is 46, calculated as follows:

| | | |
|---|---|---|
| (a)(2) | Base Offense Level | 12 |
| (b)(1) | Multiple Bribes | +2 |
| (b)(2) | Value of Benefit more than $250,000,000 | +28 |
| (b)(3) | High Level Official Involved | <u>+4</u> |
| | **Total Offense Level** | **46** |

Base Fine.  Based upon U.S.S.G. § 8C2.4(a)(2), the base fine is $315,089,098, which is the pecuniary gain to Glencore from the criminal conduct.

Culpability Score.  Based upon U.S.S.G. § 8C2.5, the culpability score is 8, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |

6

| (b)(1)(A)(i) | Individual within high-level personnel participated in, condoned, or willfully ignorant of offense | +5 |
| (g)(2) | Cooperation, Acceptance | -2 |
| | TOTAL | 8 |

Calculation of Fine Range:

| Base Fine (U.S.S.G. § 8C2.4(a)(2)) | $315,089,098 |
| Multipliers (U.S.S.G. § 8C2.6) | 1.6 (min) / 3.2 (max) |
| Fine Range (U.S.S.G. § 8C2.7) | $504,142557 (min) $1,008,285,114 (max) |

During the hearing on May 24, 2022, the Court inquired whether U.S.S.G. § 8C4.1 applied in this instance.  The Department is not seeking a reduction in Glencore's criminal fine for providing substantial assistance against other organizations or individuals who are unaffiliated with Glencore.  The commentary to U.S.S.G. § 8C4.1 explains that a departure may be warranted where substantial assistance is provided by a company related to "crimes committed by individuals not directly affiliated with the organization or by other organizations.  It is not intended for assistance in the investigation or prosecution of the agents of the organization responsible for the offense for which the organization is being sentenced."  U.S.S.G. § 8C4.1 cmt. note 1.  Although Glencore provided meaningful and valuable cooperation, the information it provided did not rise to the level of substantial assistance against organizations or individuals not directly affiliated with the Company or one of its agents.

### B.  Reduction of the Criminal Fine Below the Sentencing Guidelines

1.  Cooperation Credit Pursuant to The Justice Manual's
FCPA Corporate Enforcement Policy

During the hearing on May 24, 2022, the Court requested additional information regarding the Department's policy that supported a reduction of the criminal fine below the low end of the

7

Sentencing Guidelines.  As set forth below, the Department's considerations in arriving at an appropriate disposition of this case—including the form of the resolution, the imposition of a monitorship, the calculation of the fine amount and forfeiture, and the 15% reduction of the criminal fine amount for the Company's cooperation and remediation—are predicated on a faithful application of the factors set forth in the Department of Justice Manual (the "Justice Manual"), which explicitly includes the FCPA Corporate Enforcement Policy ("CEP").  *See* Justice Manual, 9-47.120, *FCPA Corporate Enforcement Policy* (available at www.justice.gov/jm/jm-9-47000-foreign-corrupt-practices-act-1977#9-47.120).

In nearly all cases, successful FCPA prosecutions require the Department to obtain evidence located in foreign countries.  Many actors engaged in international bribery schemes employ sophisticated methods to hide their wrongdoing, including by concealing payments in their corporate records, using third-party intermediaries and middlemen to make payments, and establishing shell companies and using bank accounts in offshore jurisdictions.  This case presents but one such example.  Accordingly, the CEP outlines specific incentives and benefits for companies that cooperate with the Department's investigations and engage in appropriate remediation.  The CEP opens with the following sentence to underscore its rationale: "Due to the unique issues presented in FCPA matters, including their inherently international character and other factors, the FCPA Corporate Enforcement Policy is aimed at providing additional benefits to companies based on their corporate behavior once they learn of misconduct."  Justice Manual, 9-47.120.

In April 2016, the Department initiated the CEP Pilot Program, and it announced a revised CEP in November 2017.[2] *See Statement by Assistant Attorney General Leslie R. Caldwell of the Justice Department's Criminal Division, Criminal Division Launches New FCPA Pilot Program*, (https://www.justice.gov/archives/opa/blog/criminal-division-launches-new-fcpa-pilot-program), April 5, 2016 ("And today, as part of our effort to promote both transparency and accountability, we are launching a one-year pilot program in the Fraud Section's FCPA Unit, which provides guidance to our prosecutors for corporate resolutions in FCPA cases, and which is designed to motivate companies to voluntarily self-disclose FCPA-related misconduct, fully cooperate with the Fraud Section, and, where appropriate, remediate flaws in their controls and compliance programs."). DOJ prosecutors are instructed to follow the CEP guidance when analyzing, among other things, whether to seek criminal charges against a corporation for FCPA violations, whether a reduction in the Guidelines fine amount is warranted, and how much of the fine should be discounted based on cooperation and remediation.[3]

Pertinent to this matter, the CEP provides that "[i]f a company did not voluntarily disclose its misconduct to the Department"—which is the case with Glencore—"but later fully cooperated and timely and appropriately remediated in accordance with the standards set forth above, the

---

[2] *See also Deputy Attorney General Rosenstein Delivers Remarks at the 34th International Conference on the Foreign Corrupt Practices Act*, (https://www.justice.gov/opa/speech/deputy-attorney-general-rosenstein-delivers-remarks-34th-international-conference-foreign), Nov. 29, 2017 (announcing that the CEP will be included in the Justice Manual and explaining that "[t]he advantage of the [CEP] policy for businesses is to provide transparency about the benefits available if they satisfy the requirements. We want corporate officers and board members to better understand the costs and benefits of cooperation. The policy therefore specifies what we mean by voluntary disclosure, full cooperation, and timely and appropriate remediation.")

[3] Additionally, Justice Manual 9-28.000, *Principles of Federal Prosecution of Business Organizations*, also provides guidance to DOJ prosecutors regarding corporate enforcement policies related to charging decisions and corporate cooperation issues.

company will receive, or the Department will recommend to a sentencing court, up to a 25%

reduction off of the low end of the U.S.S.G. fine range." *Id.* Importantly, the 25% reduction

represents a ceiling on the reduction in the fine range, which reduction is dependent upon the level

of cooperation provided by a company.

As described in detail below (*infra* pp. 13-18), in the years since the inception of the FCPA

Pilot Program and the CEP, the Department has, in the vast majority of cases, recommended a fine

reduction below the low end of the Guidelines, based on a company's level of cooperation and

remediation.  Here, although Glencore engaged in meaningful cooperation (as described in the

Plea Agreement Paragraph 7(e) and Glencore's Sentencing Memorandum), the Department

concluded that a 15 percent reduction was appropriate, in light of Glencore's cooperation and

remediation.  (*See* Plea Agreement, at ¶¶ 7(d) and (i).)  This level of credit balances both the scope

and limits of Glencore's cooperation.

Glencore cooperated with the Department's investigation since approximately 2018 and

continuously disclosed pertinent evidence that assisted the Department with its investigation (and

it continues to do so).  As discussed in the Plea Agreement and articulated in great length in

Glencore's Sentencing Memorandum, its cooperation included: (1) disclosing facts that Glencore

identified through its independent internal investigation; (2) voluntarily making detailed factual

presentations and producing a significant volume of documents located abroad without implicating

data privacy laws; (3) gathering and providing voluminous evidence that the Company had

translated; (4) engaging an outside forensic accounting firm to analyze complex trading activity

and providing that analysis to the Department; and (5) informing the Department of all relevant

facts known to it, including regarding Glencore employees and third-party intermediaries

described in the Statement of Facts.  (*See* Plea Agreement, at ¶ 7(c).)

More specifically, and as noted in Glencore's Sentencing Memorandum, the Company conducted an extensive internal investigation into the misconduct that spanned multiple countries and different business practices and provided evidence of misconduct regarding high-level executives and managers, all of which assisted the Department in preserving evidence and developing its own independent investigation.  (*See* Glencore's Sentencing Memorandum at 5-8.) The Company also collected and produced voluminous documents to the Department that were located abroad and could not have been obtained via subpoena power alone.  (*See id.* at 6-7.) Indeed, without these productions, the Department's investigation and the resolution could have been significantly delayed, because of the additional time and effort that would have been required to obtain the relevant materials through foreign treaties and agreements.  Glencore also provided evidence obtained through the review of thousands of financial transactions conducted by forensic accountants.  As part of its cooperation, Glencore routinely made disclosures in a timely manner regarding key facts, made presentations regarding important email communications and transactions, and assisted in identifying culpable parties.   Such cooperation assisted the Department, for example, in bringing charges against and securing a guilty plea from Anthony Stimler in July 2021.  *See Stimler*, 21 Cr. 471 (PKC), Dkt. 2.

In addition, prior to receiving a subpoena specifically related to conduct in Brazil, the Company provided the Department with evidence regarding misconduct in that country. Additionally, the Company presented facts about its misconduct in the Democratic Republic of the Congo ("DRC"), and accepted responsibility for the DRC conduct, which resulted in the inclusion of those profits in the total criminal fine calculation.   In sum, the Defendant's meaningful cooperation provided significant assistance to the Department's investigation of a complex bribery scheme touching on multiple jurisdictions around the world.

11

The Plea Agreement also recognizes the remedial measures taken by the Defendant.  The Company invested significant resources to develop and improve its ethics and compliance program by, among other steps, increasing the number of employees who work in compliance functions. The Defendant also reduced its third-party business partners, invested in real-time compliance monitoring and risk assessment, and required and implemented relevant training for certain employees.  (*See* Glencore's Sentencing Memorandum at 8-9.)

As noted in the Plea Agreement, however, the Defendant did not receive the maximum 25 percent credit available under the CEP for its cooperation and remediation as a result of various shortcomings, including delays in producing certain relevant evidence and the failure to timely and appropriately remediate with respect to certain employees involved in the misconduct.  (*See* Plea Agreement, at ¶ 7(d).)

> 2.   Reducing the Fine Below the Guidelines Range is Consistent with
> Prior Resolutions and Avoids Unwarranted Sentencing Disparities

Based on the Department's assessment of the particular facts and circumstances of Glencore's cooperation and remediation, the Department determined that a 15 percent reduction in the criminal fine from the bottom of the Sentencing Guidelines is appropriate and consistent with prior FCPA resolutions and avoids unwarranted sentencing disparities.  Since the adoption of the CEP into the Justice Manual in 2017, there have been numerous corporate resolutions in which companies received varying reductions from the low end of the Guidelines fine range, pursuant to the standards set forth in the CEP, examples of which are set forth below:[4]

---

[4] FCPA enforcement actions are publicly available and can be found at the following website: https://www.justice.gov/criminal-fraud/enforcement-actions.  For purposes of this submission, we identified resolutions that were filed post-2016 when the CEP policy went into effect.

*25 Percent Reduction Below the Low End of the Guidelines Fine Range*[5]

- *United States v. Stericycle, Inc.*, Case No. 1:22-cr-20156-KMM (S.D. Fla. April 18, 2022) (DPA with 25 percent reduction from bottom of the Guidelines fine range because the company proactively disclosed evidence, provided information obtained through its internal investigation that allowed the Department to preserve and obtain evidence as part of its own independent investigation, facilitated interviews in the United States of foreign-based employees, and produced voluminous relevant documents, including documents located outside of the United States, accompanied by translations);

- *United States v. Amec Foster Wheeler Energy Limited*, Case No. 1:21-cr-00298-KAM, (E.D.N.Y. Jun 25, 2021) (DPA with 25 percent reduction from bottom of the Guidelines fine range because the company made factual presentations to the Department, facilitated interviews in the United States of former foreign-based employees, and produced extensive amounts of documents);

- *United States v. Vitol Inc.*, Case No. 1:20-cr-00539-ENV (E.D.N.Y. Dec. 3, 2020) (DPA with 25 percent reduction from bottom of the Guidelines fine range because of cooperation and remediation, including making factual presentations to the Department, facilitating interviews of former foreign-based employees, producing documents outside the United States with translations, and timely accepting responsibility);

- *United States v. Sargeant Marine Inc.*, Case No. 1:20-cr-00363-ENV (E.D.N.Y. Sept. 22, 2020) (guilty plea with 25 percent reduction from bottom of the Guidelines fine range because the company conducted a thorough internal investigation, identified relevant facts for the Department, produced documents, and made foreign-based employees available for interviews); [6]

- *United States v. Herbalife Nutrition Ltd*, Case No. 1:20-cr-00443-GHW (S.D.N.Y. Sept. 1, 2020) (DPA with 25 percent reduction from the bottom of the Guidelines fine range because the company made regular factual presentations to the

---

[5] Other examples of corporate matters resulting in a fine or penalty that was 25 percent below the low end of the Guidelines fine range in light of the company's full cooperation and remediation include the following cases: *United States v. Transport Logistics International, Inc.* Case No. 8:18-cr-00011-TDC (D. Md. Mar. 12, 2018); *United States v. SBM Offshore N.V.*, Case No. 4:17-cr-00686 (S.D. Tex. Nov. 21, 2017); *United States v. Telia Company AB*, Case No. 1:17-cr-00581-GBD (S.D.N.Y. Sept. 21, 2017); *United States v. Sociedad Quimica y Minera de Chile, S.A.*, Case No. 1:17-cr-00013-TSC (D.D.C. Jan. 13, 2017); *United States v. Rolls-Royce PLC*, Case No. 2:16-cr-247 (S.D. Ohio Dec. 20, 2016).

[6] In *Sargeant Marine Inc.*, the Department verified that the company had an inability to pay the criminal fine and further reduced the amount owed on that basis.

Department, produced documents located outside of the United States with translations, made employees available for interviews, and disclosed conduct the Department did not previously know about);

- *United States v. Airbus SE*, Case No. 1:20-cr-00021-TFH (D.D.C. Jan. 28, 2020) (DPA with 25 percent reduction from the bottom of the Guidelines fine range because of the company's full cooperation and remediation, and for compiling evidence, giving presentations to the Department, and identifying relevant issues); and

- *United States v. Odebrecht S.A.*, Case No. 16-643-RJD (E.D.N.Y. Dec. 21, 2016) (Guilty plea with a 25 percent reduction from the bottom of the Guidelines fine range for the company's full cooperation and remediation).

<u>*20 Percent Reduction Below the Low End of the Guidelines Fine Range*</u>

- *United States v. Samsung Heavy Industries Co. Ltd.*, Case No. 1:19-cr-00328-TSE (E.D. Va. Nov. 22, 2019) (DPA with 20 percent reduction from the bottom of the Guidelines fine range because the company failed to meet deadlines and delayed the resolution);

- *United States v. Societe Generale S.A.*, Case No. 18-cr-00253-DLI (E.D.N.Y. Jun. 11, 2018) (DPA with 20 percent reduction from the bottom of the Guidelines fine range for the FCPA conduct and 15 percent off the bottom of the Guidelines for the LIBOR conduct because the company's cooperation was incomplete in the early stages of the investigation);

- *United States v. Panasonic Avionics Corporation*, Case No. 1:18-cr-00118-RBW (Apr. 30, 2018 D.D.C.) (DPA with 20 percent reduction from the bottom of Guidelines fine range because the company gave factual presentations, disclosed information learned from witness interviews, made employees available for interviews, collected and organized voluminous materials, disclosed information the Department was unaware of at the time, and engaged in significant remediation, but some of which was untimely);

- *United States v. Embraer S.A.*, Case No. 0:16-cr-60294-JIC (S.D. Fla. Oct. 24, 2016) (DPA with a 20 percent reduction from the bottom of the Guidelines fine range where there the company provided full cooperation but engaged in only partial remediation);

- *United States v. Och-Ziff Capital Management Group LLC*, Case No. 1:16-cr-00516-NGG (E.D.N.Y. Sept. 29, 2016) (DPA with 20 percent reduction from the bottom of the Guidelines fine range because of the company's delays in cooperation during the earlier part of the investigation); and

- *United States v. Olympus Latin America, Inc.*, Case No. 16-3525 (D.N.J. Mar. 3, 2016) (DPA with 20 percent reduction from the bottom of the Guidelines fine range for the company's cooperation and remediation efforts).

<u>*15 Percent Reduction Below the Low End of the Guidelines Fine Range*</u>

- *United States v. Credit Suisse Group AG*, Case No. 1:21-cr-00521-WFK (E.D.N.Y. Oct. 21, 2021) (DPA with 15 percent reduction from the bottom of the Guidelines fine range because the company collected and produced voluminous evidence located in other countries, voluntarily made foreign-based employees available for interviews in the United States, made regular factual presentations to the Department, and voluntarily provided information and made foreign-based employees available to testify at trial; however, the company significantly delayed in producing relevant evidence, including recorded phone calls in which employees discussed concerns related to the conduct at issue);

- *United States v. Telefonaktiebolaget LM Ericsson*, Case No. 1:19-cr-00884-AJN (S.D.N.Y. Dec. 6, 2019) (DPA with 15 percent reduction from the bottom of the Guidelines fine range because the company made regular factual presentations to the Department, provided facts learned during witness interviews, voluntarily made foreign-based employees available for interviews, produced extensive documentation, including documents located outside of the United States as well as translations of foreign language documents, and proactively disclosed some conduct of which the Department was previously unaware; however, the company failed to disclose allegations of corruption with respect to two relevant matters, produced relevant materials in an untimely manner, and did not timely and fully remediate, including by failing to take adequate disciplinary measures with respect to certain executives and other employees involved in the misconduct);

- *United States v. Braskem S.A.*, Case No. 16-644-RJD (E.D.N.Y. Dec. 21, 2016) (guilty plea with 15 percent reduction from the bottom of the Guidelines fine range where the company provided cooperation but did not begin fully cooperating until the Department developed significant evidence regarding the conduct).

<u>*10 Percent Reduction Below the Low End of the Guidelines Fine Range*</u>

- *United States v. Goldman Sachs Group, Inc.*, Case No. 20-437-MKB (E.D.N.Y. Oct. 22, 2020) (DPA with 10 percent reduction from the bottom of the Guidelines fine range where the company cooperated by collecting and producing voluminous evidence located in other countries, made regular factual presentations, and voluntarily made foreign-based employees available for interviews in the United States; however, the company was significantly delayed in producing relevant evidence, including recorded phone calls in which employees and executives discussed allegations of bribery and misconduct);

- *United States v. Beam Suntory Inc.*, Case No. 1:20-cr-00745 (N.D. Ill. Oct. 23, 2020) (DPA with 10 percent reduction from the bottom of the Guidelines fine range where the company cooperated by making factual presentations, making foreign-based employees available for interviews in the United States, and producing documents located in foreign countries; however, the company provided inconsistent and, at times, inadequate cooperation, including positions taken by the company that were not consistent with full cooperation, as well as significant delays caused by the company in reaching a timely resolution and its refusal to accept responsibility for several years); and

- *United States v. J&F Investimentos SA*, Case No. 1:20-cr-00365-MKB (E.D.N.Y. Oct. 14, 2021) (guilty plea with 10 percent reduction from the bottom of the Guidelines fine range where the company cooperated by conducting an internal investigation, making factual presentations, and voluntarily making foreign-based employees available for interviews in Brazil; however, the company initially declined to produce all relevant materials and failed to produce all relevant documents and information in a timely manner).

The above list is illustrative, but not comprehensive or exhaustive. Since the implementation of the CEP, there are several matters in which the Department has sought fines or penalties within the Sentencing Guidelines fine range, as opposed to below the bottom of the Guidelines range. But those matters have generally involved aggravating circumstances, such as a corporate criminal recidivist, that are not present here. For instance, in *United States v. Mobile TeleSystems PJSC*, Case No. 1:19-cr-00167-JPO (S.D.N.Y. Mar. 18, 2019), the Department entered into a DPA with Mobile TeleSystems PJSC, and its subsidiary accepted a guilty plea. The DPA required a financial penalty of approximately 25 percent *above* the low end of the Sentencing Guidelines fine range because the company delayed production of certain materials, did not support interviews with employees during parts of the investigation, and failed to appropriately remediate.

Additionally, in *United States v. Deutsche Bank Aktiengesellschaft*, Case No. 20-cr-00584 (E.D.N.Y. Dec. 22, 2020), although the company received full credit for cooperation and remediation of 25 percent, the Department discounted the fine range from the middle of the

Guidelines to reflect the company's prior similar misconduct in manipulating the London Interbank Offered Rate ("LIBOR"), which had resulted in a criminal resolution in 2015. *See also United States v. TechnipFMC plc*, Case No. 1:19-cr-00278-KAM (E.D.N.Y. June 25, 2019) (DPA with 25 percent reduction from the middle of the Guidelines fine range, resulting in a Guidelines sentence, because the company was a recidivist with a prior FCPA violation); *United States v. Latam Airlines Group S.A.*, Case No. 0:16-cr-60195-DTKH (S.D. Fla. July 25, 2016) (DPA imposing a criminal penalty 25 percent above the low end of the Guidelines fine range, where the company did not remediate adequately and its subsidiary previously pleaded guilty in a criminal conspiracy to fix prices in the airline cargo industry).

In sum, the Government has applied the CEP in numerous instances to permit a reduction of up to 25%, but also less than 25%, where appropriate, based on the individual assessment of the facts and circumstances of the case. In the Government's view, given Glencore's level of cooperation and remediation, the Company has earned an additional 15 percent reduction based on the CEP, and this credit will ensure that the sentence avoids unwarranted sentencing disparities when comparing similarly situated corporate defendants.

### C. Sentencing Factors

#### 1. Seriousness of the Offense, Respect for the Law, and Just Punishment

The Defendant engaged in a conspiracy to violate the FCPA for over a decade, in seven different countries, making over $100 million in payments to intermediaries with the intent that a significant portion of these payments would be used to pay bribes to and for the benefit of foreign officials to secure an improper advantage and to influence those foreign officials in order to obtain and retain business. Glencore's conduct undermines the foundational principle that public officials should act solely in the interest of the public good, not their own financial interest. It discourages

honest citizens who would seek out public service from doing so, because it creates the appearance

that money, above all, drives outcomes.  And it taints those officials who serve the public with

integrity, and those non-governmental organizations that are committed to their mission.  The

damage caused by corruption is real, and lasting.  As the UN General Assembly explained in 2003:

> Corruption is an insidious plague that has a wide range of corrosive effects on
> societies.  It undermines democracy and the rule of law, leads to violations of
> human rights, distorts markets, erodes the quality of life and allows organized
> crime, terrorism and other threats to human security to flourish.  This evil
> phenomenon is found in all countries—big and small, rich and poor—but it is in
> the developing world that its effects are most destructive.  Corruption hurts the poor
> disproportionately by diverting funds intended for development, undermining a
> Government's ability to provide basic services, feeding inequality and injustice and
> discouraging foreign aid and investment.  Corruption is a key element in economic
> underperformance and a major obstacle to poverty alleviation and development.

UN Convention Against Corruption, Forward, available at
https://www.unodc.org/documents/treaties/UNCAC/Publications/Convention/08-50026_E.pdf

The seriousness of this offense requires a significant sentence, and the terms of the Plea

Agreement with the corporate parent company, Glencore International AG, deliver the necessary

and commensurate punishment.

*First*, the form of the corporate resolution in this case reflects the seriousness of the offense

and should be considered by the Court in evaluating the terms of the Plea Agreement.[7]  A guilty

plea by a parent-level corporate entity represents a significant criminal conviction for the company.

The Department carefully analyzed the facts and circumstances of this case and determined that

the parent company should be held criminally liable for its conduct.  *See* Justice Manual, 9-28.300

*– Factors to be Considered* (setting forth factors prosecutors must consider in determining whether

---

[7] In the corporate criminal context, the range of possible resolutions includes a declination, a Non-Prosecution Agreement, a Deferred Prosecution Agreement, a subsidiary-level guilty plea, and a parent-level guilty plea.  The present case involves a parent-level guilty plea, which is the most significant form of corporate resolution.

to bring charges and negotiating plea or other agreements with corporations).  In contrast to the Glencore resolution, many prior FCPA cases, including several listed above, did not require parent-level guilty pleas.  While each case, of course, must be evaluated on its own merits and based on the specific facts and circumstances at issue, the imposition of criminal corporate liability on Glencore's Swiss parent company is substantial and reflects the seriousness of the misconduct in this case.

*Second*, as part of the resolution, Glencore agreed to pay significant financial penalties. During the hearing on May 24, 2022, the Court inquired whether the fine was sufficiently severe, given the Defendant's total revenue.  As part of the Plea Agreement, Glencore not only agreed to a criminal fine of $428 million, but also consented to forfeiture in the amount of $272 million, placing this among the largest FCPA resolutions in history.   Moreover, these financial penalties are tied specifically to the facts of the case and the United States Sentencing Guidelines.  The Department faithfully applied the Sentencing Guidelines to the offense conduct to determine the appropriate fine level, as it does in every case of this nature and magnitude.  The size of the penalty reflects the seriousness of the offense while ensuring equal treatment across corporate defendants for similar conduct.

*Third*, beyond the structure of the resolution and the financial penalties, the resolution also requires the imposition of a three-year monitor.  The monitor's "primary responsibility is to assess and monitor the Company's compliance with the terms of the Agreement . . . [and] to specifically address and reduce the risk of any recurrence of the Company's misconduct."  (Plea Agreement, Attachment D, at ¶ 2.)  As a result, the monitor helps ensure that Glencore implements lasting changes and best practices in order to prevent a recurrence of the criminal conduct.

In sum, the negotiated resolution and proposed sentence is substantial and promotes respect for the law and provides just punishment to Glencore for committing this serious offense.[8]

### 2.   Adequate Deterrence and Protection of the Public

The severity of the sentence contemplated in the Plea Agreement, including the imposition of a substantial fine and forfeiture, also helps to promote specific and general deterrence.  With respect to specific deterrence, the Plea Agreement requires the imposition of a three-year compliance monitor whose mandate is to reduce and address the risk of recurrence of the criminal conduct.  The Government is not simply taking Glencore's word that it has fully remediated. Rather, Glencore will be closely monitored throughout the term of the Plea Agreement to ensure that it has meaningfully changed.  With respect to general deterrence, the resolution has resulted in significant media attention, which should help to deter other companies that may consider engaging in unfair and illegal bribery conduct in violation of the FCPA.

### 3.   History and Characteristics of the Defendant

The Company has addressed its history and characteristics in its Sentencing Memorandum. *See* Glencore's Sentencing Memorandum at 8-10.  Although the Company has admitted to engaging in criminal conduct for more than a decade, the Department agrees with the Defendant that it took appropriate remedial measures that should be considered under this factor.  *Id.*  For instance, the Company has replaced senior management and terminated employees involved in the wrongdoing.  *Id.* at 9.  Additionally, the Company has significantly reduced its reliance on

---

[8] On May 24, 2022, in the District of Connecticut, the Department filed a separate one-count Information against Glencore Ltd., a subsidiary of Glencore International A.G., for Conspiracy to Commit Commodity Price Manipulation, in violation of Title 18, United States Code, Section 371. *See United States v. Glencore Ltd.*, Case No. 3:22-cr-00071-SVN (D. Conn. 2022).  As part of that resolution, Glencore Ltd. was required to pay a total criminal penalty of $485,638,885, comprised of a criminal fine in the amount of $341,221,682, forfeiture in the amount of $144,417,203, and to obtain an independent compliance monitor for a period of three years.

intermediaries and taken appropriate measures to prevent fraud by developing its compliance program. *Id.* at 9-10. As set forth in Glencore's Sentencing Memorandum, the Company has taken meaningful steps to become a different company from what is described in the Statement of Facts. *Id.*

## IV.    Crediting Foreign and Domestic Resolutions

### A.  Avoiding "Piling on" Fines for the Same Misconduct

Pursuant to the guidance provided to prosecutors in the Justice Manual, the Department coordinated its resolution with Glencore with various law enforcement agencies in the United Kingdom, Switzerland, Brazil, and the United States. The broad international nature of Glencore's conspiracy implicated the interests of multiple jurisdictions. In light of the Company's intention to seek resolutions with multiple authorities that were investigating overlapping misconduct, application of the Justice Manual's provision 1-12.100, colloquially known as the "Anti-Piling on Policy," was warranted. Justice Manual provision 1-12.100 instructs prosecutors to "coordinate with and consider the fine amounts, penalties, and/or forfeiture paid to other federal, state, local, or foreign enforcement authorities that are seeking to resolve a case with a company for the same misconduct." Justice Manual 1-12.100 – *Coordination of Corporate Resolution Penalties in Parallel and/or Joint Investigations and Proceedings Arising from the Same Misconduct.* In determining whether and how much of the criminal fine, penalty, or forfeiture to credit, prosecutors may consider factors that include "the egregiousness of the company's misconduct; statutory mandates regarding penalties, fines, and/or forfeitures; the risk of unwarranted delay in achieving a final resolution; and the adequacy and timeliness of a company's disclosures and cooperation with the Department, separate from any such disclosures and cooperation with other relevant enforcement authorities." *Id*. Consistent with the "Anti-Piling on Policy," the Department has in

numerous coordinated FCPA resolutions over the last several years credited amounts paid by companies to foreign authorities.[9]

In this case, multiple authorities other than the Department have been conducting years-long parallel investigations into Glencore's misconduct, including authorities in the United Kingdom, Switzerland, Brazil, as well as the CFTC.   Indeed, authorities in the United Kingdom and Brazil, as well as the CFTC, announced charges against Glencore simultaneous with the DOJ, on May 24, 2022.

### B.  Crediting Foreign Authorities

As set forth in the Paragraph 22(b) of the Plea Agreement, the Defendant will be required to pay at least $262,590,214 (approximately 60% of the Total Criminal Fine) to the United States. The Government will credit up to $136,236,140 and $29,694,819 to authorities in the United Kingdom and Switzerland, respectively, so long as Glencore resolves those investigations and pays penalties in accordance with the time periods laid out in the Plea Agreement.  *See* Plea Agreement, at ¶¶ 22(b)(1), (b)(2).  Specifically, the basis for the crediting is as follows.

The authorities in the United Kingdom investigated the Company for bribery in Nigeria, Cameroon, Equatorial Guinea, and Ivory Coast.  *Id.* at ¶ 22(b)(1).  On November 3, 2022, the Southward Crown Court in the United Kingdom sentenced Glencore UK Ltd. to pay more than £280 million.  The Department is prepared to credit Glencore for payments of up to approximately $136 million that it makes to authorities in the United Kingdom for certain conduct that occurred

---

[9] *See, e.g.*, *U.S. v. Odebrecht S.A.* (crediting payments to Brazil and Switzerland); *U.S. v. Keppel Offshore & Marine* (crediting payments to Brazil and Singapore); *U.S. v. Goldman Sachs Group, Inc.* (crediting payments to multiple authorities); *U.S. v. Vitol, Inc.* (crediting payments to Brazil); *U.S. v. Airbus SE* (crediting payments to France); *U.S. v. Stericycle, Inc.* (crediting payments to Brazil); *U.S. v. Société Générale S.A.* (crediting payments to France); *U.S. v. Telia Company AB* (crediting payments to the Netherlands).

between March 2012 and 2018.  The Department will receive the remainder of the fine amount related to Nigeria and other West African countries, totaling approximately $216 million.

Additionally, the authorities in Switzerland have been investigating the Company for misconduct in the DRC.  In the event of a resolution of the Swiss investigation into Glencore, the Department is prepared to credit approximately half of the total criminal fine related to the conduct in the DRC—approximately $29 million—against payments Glencore makes to the Swiss authorities, assuming Glencore makes such payments on or before June 8, 2023.

If Glencore does not make payments to either foreign authority within the time period identified in the Plea Agreement, the fines described above will be paid to the United States pursuant to the terms of the Plea Agreement.  *See* Plea Agreement at ¶ 22(b).

### C.  Payments to the CFTC in Lieu of Forfeiture

On May 24, 2022, the CFTC entered its Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions (the "CFTC Order").  The allegations in the CFTC Order covered some of the same conduct as the FCPA resolution, including allegations that "[a]t various times during the Relevant Period and the Charging Period, Glencore, by and through its traders and agents, made corrupt payments to employees and agents working at state-owned entities of Brazil, Cameroon, Nigeria, and Venezuela."  CFTC Order, at 11.  The CFTC Order imposed a monetary sanction of $1,186,345,850 with an offset of $852,797,810 for payments made as part of the DOJ criminal resolutions, resulting in a disgorgement payment of $333,548,040.  *Id.* At 18.[10]  As part of the Plea Agreement, the Department agreed to credit the Defendant $90,728,597, which is the amount of forfeiture owed by the Defendant under the CFTC settlement.  *See* Plea Agreement, at ¶ 21.

---

[10] In June 2022, the Defendant paid the CFTC $333,548,040 pursuant to the CFTC Order.

V.     <u>**Conclusion**</u>

For the reasons stated above, the Department requests that the Court accept the Plea

Agreement and sentence the Defendant consistent with its terms.

Date:  November 11, 2022                     Respectfully Submitted,

                                             GLENN S. LEON
                                             Chief, Fraud Section
                                             Criminal Division
                                             U.S. Department of Justice

                                             _____
                                             Randall Warden
                                             Leila Babaeva
                                             Trial Attorneys

                                             BRENT WIBLE
                                             Acting Chief, Money Laundering
                                             and Asset Recovery Section
                                             Criminal Division
                                             U.S. Department of Justice

                                             _____
                                             Michael Khoo
                                             Trial Attorney

                                             DAMIAN WILLIAMS
                                             United States Attorney
                                             Southern District of New York
                                             U.S. Department of Justice

                                             _____
                                             Juliana Murray
                                             Michael McGinnis
                                             Assistant United States Attorneys