

**COHEN & GRESSER LLP**

800 Third Avenue
New York, NY 10022
+1 212 957 7600 phone
www.cohengresser.com

Mark S. Cohen
+1 (212) 957-7600
mcohen@cohengresser.com

Christian R. Everdell
+1 (212) 957-7600
ceverdell@cohengresser.com

April 19, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

> Re: *United States v. Glencore International A.G.*, 22 Cr. 297 (LGS)
> Motion for Release of Restitution Funds

Dear Judge Schofield:

On behalf of our clients, Dr. Ian and Laurethé Hagen, we respectfully move the Court to release the restitution funds awarded to the Hagens as victims of Glencore International A.G. ("Glencore") in the above-captioned action. As described further below, the Court granted the Hagens restitution on February 27, 2023, and Glencore deposited the restitution funds with the Clerk of Court as of March 15, 2023. The funds still have not been distributed to the Hagens, however, because the parties disagree about what is required to satisfy the condition imposed by the Court for the release of those funds. We write to advise the Court of this dispute and to recommend a solution that we believe is consistent with the Court's intent to prevent double recovery by the Hagens, while avoiding the uncertainty of further proceedings in the DRC courts where the Hagens were treated so unjustly in the past.

**I.    The Restitution Order**

In the Court's February 27, 2023 Opinion and Order and its March 15, 2023 Consent Order of Restitution, the Court ordered Glencore to pay restitution in the amount of $39,810,068.05 to the Hagens on behalf of Crusader Health RDC SARL ("Crusader"). (ECF No. 38 at 21; ECF No. 44 at 1). At Glencore's request, the Court further ordered that "[t]o minimize the risk of double recovery and later jurisdictional issues, Defendant's payment of restitution … is subject to the condition that [i] Crusader withdraw its $10,860,000 judgment in the [Democratic Republic of Congo ("DRC")] … [and ii] shall seek no further relief in the DRC for the categories of restitution awarded in this order…." (ECF No. 38 at 21; *see also* ECF No.

The Honorable Lorna G. Schofield
April 19, 2023
Page 2

44 at 1-2). The Court retained jurisdiction over this matter to oversee the payment of restitution. (ECF No. 44 at 2). As of March 15, 2023, Glencore had paid the restitution award to the Clerk of Court and the funds are available and ready to be distributed, pending the Court's determination that the above conditions are satisfied. (*Id.*).

Our clients seek to fully comply with the Court's Opinion and Order. We agree that the Mandatory Victims Restitution Act ("MVRA") does not permit double recovery and, accordingly, the Hagens are not seeking payment of the $10,860,000 judgment in the DRC ("DRC Judgment") on Crusader's behalf. In the process of satisfying the conditions for payment, however, a technical legal issue has arisen—there is no legal procedure under DRC law to "withdraw a judgment." Over the past month, we have met and conferred on several occasions with Glencore's U.S. and DRC counsel to try to reach agreement on how to implement this condition but are now at an impasse. It has now been nearly two months since the Court ordered restitution and over thirty days since Glencore paid the funds to the Clerk of Court. Yet, our clients have still not been made whole despite their best efforts to resolve this disagreement in good faith. We write to respectfully propose an approach that we believe will fully and fairly resolve this issue.

## II. The DRC Does Not Have a Procedure to Withdraw a Judgement

We have consulted with the Hagens' DRC legal advisor and expert in DRC law, Herman Lemaire, who previously submitted to the Court declarations on DRC law in connection with the Hagens' restitution application. Mr. Lemaire advised that, as a technical matter, it is not possible to withdraw a judgment in the DRC because DRC procedural law and rules do not include the concept of a "withdrawal of judgment." (Lemaire Decl. ¶ 10).

However, Mr. Lemaire counseled that the same result can be accomplished through a waiver of the right to enforce and collect a judgment. (*Id.* ¶ 11). As Mr. Lemaire explained, the beneficiary of a judgment may definitively and irrevocably waive the benefits of a judgment by undertaking never to enforce any amount awarded by the judgment in a legally binding written waiver. (*Id.* ¶¶ 11-12). Such a waiver does not require the consent of the counterparty to the judgement or any DRC court because it is a unilateral waiver that becomes effective once it is delivered to the counterparty. (*Id.* ¶¶ 13-14).

## III. Recommended Approach

Binding Waiver Letter. Consistent with this approach, Mr. Lemaire has prepared a binding waiver letter, which the Hagens have agreed to sign on behalf of Crusader waiving its rights to (i) enforce the DRC Judgment and (ii) seek further relief in the DRC for the categories of restitution awarded in the Court's Opinion and Order (the "Waiver Letter"). The Waiver Letter is attached as **Exhibit A** to this Letter and Exhibit 2 to Mr. Lemaire's Declaration. The Hagens have the authority to execute the Waiver Letter on Crusader's behalf in their capacities as the managers of Crusader. (*Id.* ¶¶ 16-17). The Waiver Letter makes clear that the Hagens are

The Honorable Lorna G. Schofield
April 19, 2023
Page 3

not seeking double recovery and are irrevocably waiving any rights to recover under the DRC Judgment the amounts that Crusader will receive in connection with the Court's Opinion and Order. (*Id.* ¶ 18). As an additional measure, the Hagens will have the executed Waiver Letter authenticated by a notary public located in the DRC, which will facilitate its enforcement. (*Id.* ¶ 15 & Ex. 2).

Order of Performance. Consistent with DRC law and by its express terms, the Waiver Letter only becomes effective upon delivery of the executed Waiver Letter to Glencore's subsidiary, Kamoto Copper Company SA ("KCC"), following payment of the restitution funds to our law firm's escrow account for immediate disbursement to the Hagens. (*Id.* ¶ 15 & Ex. 2). To this end, and to provide for fair and reasonable timing and order of performance, we respectfully request that the Court order the following: (i) the Hagens will execute the Waiver Letter and deliver it to our firm to hold in escrow; (ii) upon notification of this to the Court, the Clerk of Court will release the restitution funds to our firm's escrow account for immediate disbursement to the Hagens; and (iii) upon receipt of the funds, we will deliver the Waiver Letter to KCC and Glencore's counsel. Once the Waiver Letter becomes effective, it will be a valid and binding waiver under DRC law that prevents Crusader or anyone acting on its behalf from collecting on the DRC Judgment and pursuing further relief in the DRC for the categories of restitution awarded. (*Id.* ¶ 18).

We respectfully submit that this approach is the fairest and most effective way to address the Court's concern about double recovery and satisfy the conditions for payment in the Court's Opinion and Order and its Consent Order of Restitution. It also ensures that the Hagens will receive the restitution funds in a timely manner consistent with the Court's Opinion and Order and the Hagens' right to "full and timely restitution" under the Crime Victims' Rights Act ("CVRA"). 18 U.S.C. § 3771(a)(6). We therefore respectfully request that the Court adopt this approach and approve the release of the restitution funds as set forth above. If the Court follows this approach, it need not take any further action.

### IV. Glencore's Position

We have explained this approach to Glencore and provided them with a substantially similar version of the proposed Waiver Letter.[1] Glencore does not dispute that: (i) as a technical legal matter, Crusader cannot formally withdraw a judgment in the DRC; or that (ii) the Waiver Letter is a valid, binding document, which prevents Crusader and the Hagens from seeking any form of double recovery of the amounts awarded by the Court in the restitution proceeding. Nevertheless, Glencore is unwilling to accept the Waiver Letter by itself. Glencore insists that Crusader must also initiate a new proceeding in the DRC to obtain a "jugement d'expédient"

---

[1] The Waiver Letter incorporates some of Glencore's edits to the earlier version we shared with Glencore's counsel.

The Honorable Lorna G. Schofield
April 19, 2023
Page 4

(*i.e.*, a consent judgment) by asking a DRC court to ratify a modified version of the Waiver Letter.

Glencore initially took the position that (1) the restitution funds should not be released to the Hagens until a DRC court issues the jugement d'expédient, (2) the modified version of the Waiver Letter should become effective on the date the Hagens execute it and before the Hagens receive payment of the restitution funds, and (3) Crusader must pay any fees associated with obtaining the jugement d'expédient, which could potentially include a fee of approximately $325,000 (or 3% of the $10,860,000 awarded in the DRC Judgment) to the court registry to obtain an official copy of the DRC Judgment.

In a good faith attempt to come to an agreement, the Hagens offered to proceed with a jugement d'expédient (even though, as noted below, it is not required and may not be available), as long as Glencore agreed that the restitution funds would be released upon execution of the Waiver Letter and agreed to pay any fees associated with the proceeding, including any court registry fees and Crusader's attorneys' fees. Glencore refused those terms and offered to release 10% of the restitution funds upon execution of the Waiver Letter, with the remaining 90% to be released after the DRC court issues the jugement d'expédient. Glencore further offered to evenly share the costs of the fees associated with the DRC proceeding, but not Crusader's attorneys' fees.

There are several critical problems with Glencore's position.

<u>First</u>, obtaining a jugement d'expédient is not necessary and would not provide any additional protection against double recovery by Crusader or the Hagens. At Glencore's request, the Court ordered the withdrawal of the DRC Judgment "[t]o minimize the risk of double recovery" by Crusader or the Hagens. (ECF No. 38 at 21; *see also* ECF No. 44 at 1-2). The Waiver Letter eliminates that risk. A jugement d'expédient is not legally required to make the Waiver Letter effective, nor does it further minimize the risk of double recovery by Crusader or the Hagens beyond what is already accomplished by the Waiver Letter; it simply facilitates the enforcement of a settlement agreement. (Lemaire Decl. ¶ 23). In fact, the Waiver Letter achieves exactly what Glencore requested in its restitution submission to the Court: "payment only after Crusader *has agreed* to withdraw its DRC claim and agreed not to bring further claims based on the termination of contracts in the future." (ECF No. 25 at 23 n.8 (emphasis added)).

Glencore concedes this and has communicated to us that it wants a jugement d'expédient to protect against the possibility that unknown third-party creditors of Crusader—*i.e.*, parties other than Crusader or anyone acting on its behalf—may try to enforce the DRC Judgment. But the condition imposed by the Court is designed to protect against double *recovery* by Crusader and the Hagens, not a theoretical double *payment* by Glencore. Glencore's concern has nothing to do with preventing double recovery, and is little more than a hypothetical risk, especially when the DRC Judgment is being withdrawn in place of the much larger restitution award.

Moreover, under the circumstances here, Mr. Lemaire has significant doubts that a jugement d'expédient would even be granted by a DRC court because it is only available while the lawsuit is still ongoing and before the court issues a final judgment. (*Id.* ¶¶ 21, 24). Here, the Commercial Court of Kolwezi entered the DRC Judgment in 2019 and no longer retains jurisdiction over the case, so the application may not be accepted. (*Id.* ¶ 25).

Second, Glencore's proposal that the modified version of the Waiver Letter should become effective on the date the Hagens execute it, in exchange for only 10% of the restitution award, unfairly prejudices the Hagens. If the Waiver Letter becomes effective upon execution, then Crusader will have waived its rights before the Court has authorized release of the funds and will not be able to receive 90% of the funds unless and until the DRC court issues the jugement d'expédient, regardless of how long that may take. We do not believe that the Court anticipated that its ruling would require the Hagens to waive their rights and await the outcome of a new proceeding before a DRC court before they are made whole.

Third, the procedure could be time consuming and result in further litigation. Under the CVRA, the Hagens and Crusader are entitled to "full and timely restitution as provided by law." 18 U.S.C. § 3771(a)(6). A jugement d'expédient requires a mutual agreement by the parties and both parties must appear before the DRC court to request the relief sought. (Lemaire Decl. ¶ 22). There is no set time period for Glencore's proposed procedure, which could take weeks, multiple months, or longer. (*Id.* ¶ 26). Glencore insists the proceeding will take no longer than two weeks but cannot assure the Hagens or Crusader of a successful result after two weeks. Nor has Glencore shown any urgency to ensure prompt payment up to this point. And, if the application is denied, further filings or additional proceedings may be required by the DRC court, which could require a different approach that is itself time consuming. (*Id.* ¶ 25). Our clients have waited more than ten years to be made whole and should not be subjected to further delays and uncertainties in the DRC courts.

Fourth, under Glencore's proposal, Crusader would be required to pay half the fees associated with obtaining the jugement d'expédient, which could include half of the roughly $325,000 fee to the court registry to receive an official copy of the DRC Judgment, as well as the cost to litigate this second proceeding. Crusader does not have enough assets to pay such a high fee or engage in further litigation. Even if it did, we submit that it is not a fair outcome to require Crusader to again spend money, let alone a significant sum of money, which would reduce the "full" restitution award to which the Hagens are entitled under the CVRA and the MVRA, in order to pursue a filing that is unnecessary and does not further minimize the risk of

The Honorable Lorna G. Schofield
April 19, 2023
Page 6

double recovery.[2]  Moreover, Glencore is the party insisting on a jugement d'expédient and is fully capable of paying the fee and Crusader's legal fees for these proceedings.[3]

<u>Fifth</u>, it would be manifestly unjust to require the Hagens to initiate an unnecessary proceeding before an unknown DRC court as a condition of recovering their restitution award. As this Court is aware, Crusader has experienced unjust outcomes in DRC courts in the past. The restitution awarded by this Court compensates the Hagens for the significant consequences that resulted *from Glencore paying a bribe to a DRC judge to improperly dismiss Crusader's lawsuit against KCC*.  The bribe resulted in nearly a decade of litigation in the DRC.  Glencore's position that 90% of the restitution funds should be withheld unless and until the Hagens return to the DRC courts, where they were mistreated at Glencore's direction, should be rejected.  A new proceeding in a DRC court is unnecessary for the reasons noted above and would disadvantage Crusader, which no longer maintains active operations in the DRC.  Further, it would impose an undue burden on the Hagens, who have long since fled the country due to Glencore's conduct and will inevitably delay their receipt of the restitution funds.

**V.     Relief Requested**

  A.     <u>The Court Should Order the Waiver Letter Procedure Requested by Claimants</u>

For these reasons, we respectfully request that the Court reject Glencore's position and adopt the Waiver Letter approach outlined above.  We further request that the Court order the above-noted order of performance for payment of the restitution funds: (i) the Hagens will execute the Waiver Letter and deliver it to our firm to hold in escrow; (ii) upon notification of this to the Court, the Clerk of Court will release the restitution funds to our firm's escrow account for immediate disbursement to the Hagens; and (iii) upon receipt of the funds, we will deliver the Waiver Letter to KCC and Glencore's counsel.

  B.     <u>If the Court Orders the Alternative Approach, It Should Order That the Hagens Be Paid Upon Delivery of the Waiver Letter to Escrow</u>

In the alternative, if this approach is not acceptable to the Court and the Court requires the Hagens to proceed on Crusader's behalf with a jugement d'expédient in the DRC (which, as noted, is not required and the Court need not order), we respectfully submit that the Hagens should not have to wait for the jugement d'expédient to receive the restitution funds.  Nor should they have to pay the fees associated with the proceeding, including any portion of the potential

---

[2] This is particularly true given that Glencore is a multi-billion-dollar company and can readily afford to make such payments, if required.

[3] As we understand it, Glencore believes that a lower cost proceeding could be used to seek the jugement d'expédient, but there is no guarantee of such an outcome.

The Honorable Lorna G. Schofield
April 19, 2023
Page 7

$325,000 fee to receive an official copy of the DRC Judgment and any attorneys' fees or other costs associated with a new proceeding in the DRC.

Accordingly, if the Court requires a jugement d'expédient, we respectfully request that the Court (1) order the same order of performance for payment of the restitution funds as specified in Section V(A) above with regards to preparation and delivery of the Waiver Letter and payment to the Hagens, and (2) order that Glencore and KCC enter into a separate agreement with Crusader, in which Glencore and KCC agree that in return for Crusader's agreement to participate in proceedings in the DRC to obtain a jugement d'expédient, Glencore and KCC shall pay any administrative fees or other costs necessary to obtain a jugement d'expédient, including the fee to receive an official copy of the DRC Judgment, and Crusader's legal fees associated with the proceedings. We have attached as **Exhibit B** to this Letter a proposed agreement incorporating these points. As indicated in the proposed agreement, we request that the Court retain jurisdiction over any disputes that may arise out of the agreement.

\*\*\*

We respectfully submit that our proposed Waiver Letter approach will resolve the matter promptly without the need for further proceedings before this Court or an unpredictable DRC court where the Hagens have previously been mistreated, and is consistent with both the spirit and letter of the Court's Opinion and Order and the Hagens' right to "full and timely restitution" under the CVRA. 18 U.S.C. § 3771(a)(6). The payment conditions imposed in the Court's Opinion and Order are designed to minimize the risk of double recovery by Crusader and the Hagens, which the Waiver Letter directly addresses, not theoretical double payment by Glencore. We do not believe that the Court anticipated that its ruling would require the Hagens to risk appearing once again before a DRC court for an indeterminate period, let alone to pay more than $100,000 to do so. The proceedings Glencore insists on are uncertain and could result in potentially protracted legal proceedings in the DRC. The Hagens should not be required to rely on the good faith of the DRC courts and risk this type of unnecessary delay before they recover the money that they are owed.

In light of the foregoing, we respectfully request that the Court find that the Waiver Letter, once it becomes effective, will satisfy the conditions necessary for payment of the restitution funds, and order the Clerk of Court to release the restitution funds upon the Hagens notifying the Court that they provided executed copies of the Waiver Letter to our firm to hold in escrow.

In the alternative, if the Court requires a jugement d'expédient, we respectfully request that the Court (1) order the same order of performance for payment of the restitution funds as specified in Section V(A) above, and (2) order the parties to execute the proposed agreement attached as Exhibit B.

The Honorable Lorna G. Schofield
April 19, 2023
Page 8

                                                              Respectfully submitted,

                                            */s/ Mark S. Cohen*
                                            Mark S. Cohen
                                            Christian R. Everdell
                                            **COHEN & GRESSER LLP**
                                            800 Third Avenue, 21st Floor
                                            New York, New York 10022
                                            (212) 957-7600