WILMERHALE

Howard M. Shapiro

+1 202 663 6606 (t)
+1 202 663 6363 (f)
howard.shapiro@wilmerhale.com

April 26, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    *United States v. Glencore International A.G.*, 22-CR-297 (LGS)
              Response to Motion for Release of Restitution Funds (Dkt. 46)

Dear Judge Schofield:

        On behalf of our client, Glencore International A.G. ("Glencore" or the "Company"), we write in response to the Motion for Release of Restitution Funds (Dkt. 46) submitted by Dr. Ian and Laurethé Hagen ("the "Hagens"), 90 percent shareholders in Crusader Health RDC SARL ("Crusader"). For the reasons set forth below, Glencore respectfully requests that the Court deny the Hagens' Motion for Release of Restitution Funds, and instead grant disbursement to the Hagens of 10 percent of the court-ordered restitution award, or approximately $3,981,006.81, immediately upon execution of the waiver letter proposed by the Hagens, with the remainder of the funds to be disbursed to the Hagens upon the entry of a consent judgment, or *jugement d'expédient*, in the Democratic Republic of the Congo ("DRC") court.

        The Court's order of restitution struck a reasonable balance between ensuring that the Hagens were appropriately compensated for harms suffered as a result of Glencore's conduct, while also protecting Glencore against the risk of further recovery for the same harms suffered. The Hagens' proposed solution, which rejects any process in the DRC, does not maintain that balance and leaves open the risk that Glencore and its affiliates may be held liable again in the DRC for the amounts covered in the restitution award. As discussed below, the waiver letter proposed by the Hagens does not satisfy the conditions in the restitution consent order that "[Crusader] first provide sufficient proof that it has withdrawn its $10,860,000 judgment in the DRC" and that Crusader "or anyone on its behalf agree to seek no further relief in the DRC for the categories of restitution awarded." Dkt. 44. A consent judgment in the DRC is necessary to satisfy these conditions and offers a reasonable compromise that will fully and fairly shield the Company against a genuine risk of further liability in the DRC without undue delay to the Hagens. Glencore understands that a consent judgment can be obtained expeditiously. Nevertheless, to address the Hagens' expressed concerns regarding delay, Glencore has agreed that it would not oppose the release of nearly $4 million to them after the execution of a waiver letter.

Wilmer Cutler Pickering Hale and Dorr LLP, 2100 Pennsylvania Avenue NW, Washington DC 20037

Beijing   Berlin   Boston   Brussels   Denver   Frankfurt   London   Los Angeles   New York   Palo Alto   San Francisco   Washington

The Honorable Lorna G. Schofield  
Southern District of New York  
April 26, 2023

WILMERHALE

## I. Background

As detailed in Glencore's Response to Victim Impact Statement and Request for Restitution by Dr. Ian and Laurethé Hagen, the Hagens' claim stems from the termination of two contracts that Crusader entered into with Glencore-controlled entities in the DRC. Dkt. 25, at 12. In 2010, Crusader brought suit in a DRC court against Kamoto Copper Company ("KCC"), an asset indirectly majority-owned by Glencore, for wrongful termination of the two contracts. That suit was dismissed as a result of bribery conduct that Glencore has acknowledged. In 2018, Crusader, through its Statutory Manager and minority shareholder, Dr. Péniel Kasongo, filed a second lawsuit against KCC, based on the same wrongful termination claims it had previously asserted in the 2010 lawsuit.[1] On December 31, 2019, the Commercial Court of Kolwezi issued a ruling in Crusader's favor, and ordered KCC to pay $10.86 million ("DRC Judgment"). Dkt. 25, at 14.

On February 27, 2023, this Court issued an Opinion and Order (the "February 27 Order") awarding restitution to the Hagens in the amount of $29,691,165, plus prejudgment interest. As relevant here, $16,084,556 of that amount was awarded as the value of Crusader's 2010 breach-of-contract action. On March 8, 2023, Glencore deposited the full amount of restitution—$39,810,068.05, including prejudgment interest—with the Clerk of Court.

On March 15, 2023, the Court issued a consent restitution order ("the Restitution Order"), Dkt. 44, conditioning the disbursement of the restitution award on the satisfaction of two conditions: (1) that "Crusader first provide sufficient proof that it has withdrawn its $10,860,000 judgment in the DRC" and (2) that Crusader "or anyone on its behalf agree to seek no further relief in the DRC for the categories of restitution awarded" in the February 27 Order. *Id.* Those conditions were necessary, as the Court has explained, because the MVRA prohibits the "double recovery" that would occur if Crusader, or those acting on its behalf, could recover both the portion of the restitution award reflecting the value of the 2010 breach-of-contract action and the judgment the DRC court awarded in 2019 for that same breach of contract. Dkt. 38, at 20-21.

Since Glencore paid the restitution to the Court, counsel for Glencore and the Hagens—including counsel in the DRC—have engaged in extensive discussions to determine how best to ensure that the conditions in the consent order will be satisfied. As part of these discussions, during a teleconference between the DRC lawyers for both parties, Glencore's outside counsel in the DRC, Jacques Bakambe Shesha, explained the simple process for obtaining a consent judgment, which is the nearest equivalent under DRC law to "withdrawal" of a judgment. Glencore also agreed that a portion of the restitution funds could be disbursed early, before the Court's conditions had been satisfied, and offered to pay for half of the fees necessary to obtain a consent judgment in the DRC. The Hagens rejected these proposals, and their motion to this Court followed.

---

[1] A copy of the Summons to a Commercial Hearing from the 2018 lawsuit, which describes Péniel Kasongo Mutombo as Crusader's Statutory Manager, is available at Ex. 4. A translated English copy is available at Ex. 5.

2

The Honorable Lorna G. Schofield
Southern District of New York
April 26, 2023

WILMERHALE

## II. A Consent Judgment is Necessary to Satisfy the Court's Conditions By Nullifying The DRC Judgment And Preventing The Risk Of Double Recovery

Both parties and their DRC legal experts recognize that there is no DRC procedure to "withdraw" a judgment. But there is a readily available near-equivalent procedure—consent judgment, or *jugement d'expédient*—that offers an efficient and similarly effective mechanism to ensure that the pending DRC Judgment can no longer be enforced and that the Court's conditions are fully satisfied. Decl. of Jacques Bakambe Shesha, Ex. 1 ("Shesha Decl.") ¶¶ 40-49. Crusader and KCC can obtain a consent judgment by presenting a joint request to the Commercial Court of Kolwezi, and the result will be an enforceable court decision nullifying the effects of the DRC Judgment and precluding any collection on that judgment by Crusader, its creditors, or other parties acting on Crusader's behalf. Shesha Decl. ¶¶ 50-51.

The Hagens' proposed waiver letter alone (the "Waiver Letter") would have no effect on the DRC Judgment. As Mr. Shesha explains, a letter would not be viewed by a DRC court as a judicial act that can nullify the effect of a judicial decision but would instead be considered more akin to the signing a contract between Crusader and KCC. Shesha Decl. ¶¶ 18-20. Without ratification by a DRC court, the Waiver Letter would in no way effectuate "withdrawal" or nullification of the DRC Judgment. Shesha Decl. ¶ 35. Even with the letter, the DRC Judgment would remain recorded against KCC in the registry of the Commercial Court of Kolwezi. Shesha Decl. ¶ 21. Because the Waiver Letter does nothing to alter or displace the DRC Judgment, it does not satisfy the conditions imposed by the Court. Relying on the Waiver Letter alone would expose Glencore to the risk of continuing liability for a "double recovery" on the DRC Judgment. A judicial process in the DRC is necessary to give the waiver letter legal effect and make it binding on Crusader and any other parties that might seek to recover on behalf of or against Crusader.

The proposed waiver letter leaves open a risk of double recovery by Crusader's creditors and contract partners. In particular, as Mr. Shesha's declaration explains, absent a consent judgment nullifying the DRC Judgment, Crusader's DRC lawyers, employees, or other creditors would remain free to seek to enforce the DRC Judgment against KCC. Such an action could take either of two forms. In a "Paulian action," a Congolese creditor of Crusader could petition the DRC court to revoke Crusader's waiver of rights under the judgment. Shesha Decl. ¶ 31. In an "oblique action," a Congolese creditor could seek to step into Crusader's shoes for purposes of continuing the DRC litigation and collecting on the judgment. *Id.* ¶ 33. In either case, without judicial ratification the waiver letter would have no effect precluding enforcement of the DRC Judgment.

The risk that one or more individuals or entities could pursue one of these avenues to enforce the DRC judgment notwithstanding the Waiver Letter is far from speculative, as there are unpaid Crusader lawyers and workers presently in the DRC. Indeed, the Hagens do not appear to deny the significant risk that such a person or entity would seek to continue the DRC

litigation and enforce the DRC Judgment. Dkt. 46, at 4. Instead, the Hagens contend that this risk is irrelevant, suggesting that "the condition imposed by the Court is designed to protect against double *recovery* by Crusader and the Hagens, not a theoretical double *payment* by Glencore." Dkt. 46, at 4 (emphasis in original). But that contention disregards that the creditors who could seek to enforce the DRC Judgment if that judgment is not nullified would otherwise have claims against Crusader itself. Leaving the DRC Judgment intact to be enforced by those creditors against KCC would allow Crusader (and the Hagens) to avoid liability on claims those creditors could otherwise bring against Crusader. The Hagens would thus receive a double recovery by obtaining both the restitution award—premised in part on these very underlying claims—and the benefit of diverting Crusader's creditors to seek compensation via the DRC Judgment instead of from Crusader, effectively transferring Crusader's liabilities to KCC. Leaving the DRC Judgment enforceable for that purpose would provide the type of windfall that the MVRA—and this Court's conditions on payment of the restitution award—seek to avoid. *See United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022) (The "goal of the [MVRA] is to provide crime victims with full compensation, but not with a windfall.").

There is also a risk that a DRC court may not view the letter as binding Crusader. The Hagens purport to act on behalf of Crusader and to bind Crusader but the letter they propose is not signed by Dr. Kasongo, who is the only Statutory Manager named in Crusader's bylaws. Art. 23 of Crusader Bylaws, French version attached as Exhibit 2, English translation attached as Exhibit 3. And it was Dr. Kasongo, not the Hagens, who brought the 2018 action on behalf of Crusader against KCC in the DRC court and obtained the DRC Judgment. Indeed, Dr. Hagen has indicated that he was not even aware of the 2018 action instigated by Dr. Kasongo until 2022, when Dr. Hagen learned of it from news accounts of Glencore's criminal prosecution. Hagen Decl. ¶¶ 62-64, Dkt. 19.

Although the Agreement for the Assignment of Claims and Rights included in the Hagens' claim for restitution stated that Crusader, represented by Dr. Kasongo, would assign "the Restitution Claim" to the Hagens, there is no indication that the assignment extends beyond that claim or that Dr. Kasongo lacks authority to act on behalf of Crusader in other actions, including the DRC litigation. Dkt. 20-2, at 2. Absent a judicially entered consent judgment nullifying the DRC Judgment, the Hagens' proposed waiver letter would do nothing to prevent Dr. Kasongo from seeking to enforce the DRC Judgment in Crusader's favor in the DRC court. As a result, the Hagens' offer to execute a letter indicating that they would waive Crusader's right to enforce the DRC judgment on Crusader's behalf, Dkt. 46-1, does not prevent a double recovery for Crusader and does not satisfy the conditions that Crusader provide "proof that it has withdrawn its $10,860,000 judgment in the DRC" and that Crusader "or anyone on its behalf agree to seek no further relief in the DRC for the categories of restitution awarded" by this Court. Dkt. 44.

The Honorable Lorna G. Schofield  
Southern District of New York  
April 26, 2023

WILMERHALE

### III. A Consent Judgment Can be Obtained Expeditiously

As detailed in Mr. Shesha's declaration, obtaining a consent judgment is a straightforward process that simply requires both parties, Crusader and KCC, to appear before a judge in the DRC so that he may take note of the Waiver Letter and the fact that Crusader's claims have been separately resolved in the United States and issue a consent judgment to that effect. Following the process outlined in Mr. Shesha's declaration, the judge would issue a consent judgment, which would replace the DRC Judgment, nullify its effects, and prevent any party from seeking collection on that judgment.

Contrary to the claims of the Hagens and Mr. Lemaire that "the requirements for a *jugement d'expédient* . . . do not exist here," Mr. Shesha details in his declaration how this process may be pursued in this case. Specifically, he explains that DRC procedure allows for parties to jointly seek a consent judgment where, as here, the judgment has not been served and thus remains pending in the DRC. Shesha Decl. ¶ 42.

As Mr. Shesha's declaration further explains, the process to obtain a consent judgment can be expeditious. The Hagens suggest that the procedure "*could* be time consuming and result in further litigation," but there is no evidence in the record to support their claims. Dkt. 46, at 5 (emphasis added). To the contrary, Mr. Shesha estimates that such a judgment, upon joint application from the parties, could likely be obtained within two weeks of an initial hearing, which could in turn be scheduled within one day of filing. Shesha Decl. ¶ 52. Because the request would come from both parties, which would jointly request the entry of a consent judgment, there is no reason to doubt that a DRC court would enter the consent judgment nor that it would do so swiftly. Shesha Decl. ¶¶ 44-45.

Glencore has thus sought Crusader's cooperation in seeking a consent judgment in the DRC court not to cause delay or hardship, but solely to ensure necessary protection against a double recovery, as the MVRA and this Court's restitution order require. Glencore timely paid the full restitution to the Clerk of Court consistent with this Court's order, Dkt. 45, it has engaged in several discussions with Crusader's lawyers since they first raised their waiver letter proposal on March 17, 2023, and Glencore is not seeking to avoid paying the funds it has already deposited with the Clerk. Moreover, Glencore appreciates that the Hagens are impatient to be compensated for their losses, even though the conditions imposed by this Court's order have not been fulfilled. For this reason, Glencore proposes that this Court order the release of 10 percent of the restitution award, nearly $4 million, immediately upon full execution of the Waiver Letter, even though the DRC Judgment remains in effect, contrary to the conditions of the restitution award. The release of a portion of the funds would also provide funds to Crusader to pay for the court fees associated with obtaining the consent judgment and Glencore also agrees to pay for half of these fees, even though Mr. Shesha has indicated that the court fees would be owed by Crusader.[2] As discussed above, Glencore anticipates that the consent judgment can be obtained

---

[2] Glencore believes that its offer to pay half the fees is a fair compromise, but if the Court believes this cost should be paid by Glencore, Glencore will not dispute paying the entirety of the fees for the consent judgment process.

The Honorable Lorna G. Schofield
Southern District of New York
April 26, 2023

WILMERHALE

expeditiously. Glencore merely asks that Crusader participate in satisfying the conditions that the Court has ordered and cooperate in jointly seeking the consent judgment in the DRC to ensure that the DRC Judgment is effectively "withdrawn."

## IV.   Conclusion

For the foregoing reasons, the Court should deny the Hagens' Motion for Release of Restitution Funds upon the Waiver Letter on the ground that the conditions imposed in the Restitution Order have not been satisfied. The Court should further order release 10 percent of the total restitution funds upon execution of the Waiver Letter and retain the remaining funds until a consent judgment nullifying the DRC Judgment has been obtained in the DRC.

Respectfully submitted,

*/s/ Howard M. Shapiro*

Howard M. Shapiro